CARL NOREEN, d.b.a. NOREEN TRUCKING & CONTRACTING COMPANY, v. PARK CONSTRUCTION COMPANY.

96 N. W. (2d) 33.

April 10, 1959—No. 37,601.

*O. A. Brecke* and *J. Robert Nygren,* for appellant.
*Bouschor & McNulty* and *Graff, Schultz & Springer,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from an order denying defendant's alternative motion for judgment notwithstanding the verdict in favor of plaintiff or for a new trial.

In the spring of 1956 the United States Corps of Army Engineers, hereinafter called the engineers, let a contract to Ashbach Construction Company for the construction of certain runways at the Williamson-Johnson Airport at Duluth. Ashbach sublet the work of furnishing and compacting the subgrade material to defendant, Park Construction Company for the construction of certain runways at the Williamson-method of compaction were controlled by specifications prepared by the engineers. The specifications required that all material must be approved by the engineers.

During May 1956 negotiations were had between Park and one Joe Kolojeski for hauling the subgrade material. Pits controlled by Kolojeski had been approved by the engineers. No contract was entered into at that time, but Kolojeski was permitted to commence hauling on June 4, 1956.

On June 2, 1956, Kris Bonander, plaintiff's general manager, called at the office of Park in Minneapolis and discussed the matter of hauling material for this job. As a result of such discussions, the parties executed an instrument, referred to in the record as exhibit 1, which reads as follows:

"Duluth, Minnesota
"June 2, 1956

"Park Construction Company
"51 37th Avenue North East
"Minneapolis 21, Minnesota
  "Re: Williamson-Johnson Airport,
       Duluth, Minnesota
       Contract No. DA 21-018-eng.-1081
"Gentlemen:

"We propose to furnish and deliver select sub-grade material to the Williamson-Johnson Airport, Duluth, Minnesota—such material to be in accordance with plans and specifications and meet with approval of the Corps of Engineers—at the unit price of ninety-five cents ($ .95) per cubic yard measured in place.

"It is understood and agreed, however, that Park Construction Company is to do the placing and compacting of such select sub-grade material as is furnished and delivered by us.

"It is also understood and agreed that in the event such sub-grade material as we have does not meet with the approval of the Corps of Engineers this proposal is null and void.

"Respectfully submitted,
"NOREEN TRUCKING AND CONTRACTING CO.
"By KRIS BONANDER  (Signed)

"Accepted June 2, 1956.
"PARK CONSTRUCTION CO.
"By W. E. CARLSON  (Signed) President"

On June 14, 1956, after a considerable portion of the material had been hauled, Park and Kolojeski entered into a written contract under the terms of which Kolojeski agreed to furnish all labor, material, skill, and instrumentalities and to secure all field measurements necessary or required and perform all work necessary or incidentally required for hauling all the subgrade material covered by this contract.

Plaintiff was not permitted to haul any material for the project. After the completion of the work he brought this action to recover damages for breach of contract. The jury returned a verdict in his favor. On this appeal, the questions for our determination are: (1) Did Park and plaintiff enter into an enforceable contract under which plaintiff had a right to furnish all or a part of the required subgrade material? (2) If such contract was entered into, has plaintiff established his ability to perform? (3) What, if any, damages should plaintiff be entitled to recover?

Plaintiff contends that exhibit 1 constitutes an enforceable contract under which he was entitled to furnish all the subgrade material required in the performance of this subcontract. Defendant contends that the alleged contract is so lacking in mutuality that it is unenforceable. The trial court determined as a matter of law that the exhibit constituted an entire contract and that plaintiff was entitled to recover if he was able to establish his ability to perform. It was the trial court's opinion that whatever ambiguity existed in the instrument signed by the parties had been eliminated by admissions in the pleadings, stipulations in the record, and the construction placed on the instrument by the parties themselves. There seems to be no dispute between the parties as to the rules applicable to the construction of a contract.

■ In Leslie v. Minneapolis Teachers Retirement Fund Assn. 218 Minn. 369, 373, 16 N. W. (2d) 313, 315, we said:

"The rule is well established that ordinarily the construction of a writing which is unambiguous is for the court, particularly when the intention of the parties is to be gained wholly from the writing. However, if the language is ambiguous, resort may be had to extrinsic evidence, and construction then becomes a question of fact, unless such evidence is conclusive. * * * Ordinarily, the question whether the language of a contract is ambiguous is one of law for the court.

\* \* \* The extrinsic facts which may be considered in aid of construction are ordinarily questions for the court. \* \* \* It is also true that where parties to a contract have given it a practical construction by their conduct, as by acts in performance thereof, such construction may be considered by the court in determining its meaning and in ascertaining the mutual intent of the parties. \* \* \* Where such extrinsic evidence is conclusive and undisputed and renders the meaning of the contract clear, its construction again becomes a question of law for the court."

Here, the evidence of plaintiff and defendant as to what they intended by the written instrument is in hopeless conflict. The problem of resolving such conflict rested with the jury.

■ At the outset, it is apparent that exhibit 1 is open to at least three interpretations: (a) That plaintiff agreed to furnish all material needed for completion of the job and that the contract was null and void if he could not procure approval of enough material to perform the contract in its entirety; (b) that plaintiff agreed to furnish and defendant agreed to accept so much material as plaintiff had for which he could procure approval; or (c) that plaintiff agreed to furnish as much material approved by the engineers as defendant would accept but that defendant could procure all or a part of such material from others.

The trial court took the position that the contract should be construed as a matter of law according to interpretation (a). The court instructed the jury:

"You are \* \* \* instructed that the contract contemplated the delivery by the plaintiff of all the select subgrade materials described and referred to in the specifications, which are in evidence, and which were later delivered by Kolojeski under his contract.[1]

\* \* \* \* \*

"We come now to the substance of the issues to be resolved by you in this case, and they are these: Did the plaintiff secure the approval from the Corps of Engineers of samples of select subgrade material representing sufficient quantity to enable plaintiff to fulfill his contract

---

[1]The parties stipulated that Kolojeski delivered 76,472 yards, measured after compaction.

with the defendant? * * *

"* * * before the plaintiff in this action is entitled to recover, he must establish by a fair preponderance of the evidence each and all of the following conditions which may be designated as conditions precedent to his right to recover, and they are these:

"1. That plaintiff secured approval from the Corps of Engineers of samples of select subgrade material representing sufficient quantity to enable him to fulfill his contract with defendant.

"2. That the approval so received was obtained and was communicated to the defendant or its supervising agents all within a reasonable time after June 2, 1956.

"3. That immediately thereafter plaintiff was ready, able and willing to perform his contract and requested or demanded performance of the contract, and that defendant declined or refused to permit plaintiff to perform the same."

It is obvious that these so-called conditions precedent must be read together with the court's instructions that the contract, as a matter of law, contemplated the delivery by plaintiff of all material needed to perform this subcontract. When that is done, the evidence in this case fails to establish a right to recover for the reason that approval of enough material to fulfill the entire contract was never procured by plaintiff. The difficulty with the position taken by the trial court is that plaintiff has not shown his ability to perform. The evidence is conclusive that plaintiff intended to procure material from two pits, known as the Christofferson pit and the Stebner pit. He submitted five samples of material from the Christofferson pit, one of which was approved. He never submitted any material from the Stebner pit, nor has he made any showing that the material in that pit would have been approved by the engineers. Even assuming that the one sample approved was characteristic of all the material in the pit, the maximum amount of material available from the Christofferson pit, according to plaintiff's own testimony, was 35,000 yards, pit run, which must be discounted at least 18 percent due to compaction. That would leave about 28,000 yards which plaintiff could have delivered. 76,472 yards were required to complete the contract. Plaintiff claims that when Park let the entire contract to Kolojeski there immediately was a breach of his contract

which would permit plaintiff to recover his loss based on a performance of the entire contract. The fallacy of this contention is that, even if the contract be construed so as to give plaintiff a right to perform all of it, he still is not relieved of the burden of proving that he could have performed if he had been permitted to do so. On that phase of the case plaintiff's proof fails entirely. Under the court's instructions, such failure of proof would be fatal to any recovery.

■ If, on the other hand, the contract be construed according to interpretation (b), then the jury could find that plaintiff could have furnished some 28,000 yards of material and that he is entitled to recover his loss of profit to that extent.

Defendant contends that there is such a lack of mutuality that the contract is unenforceable. The tenability of that contention depends on the construction that is placed on the contract. To some extent defendant relies on the rule of Bailey v. Austrian, 19 Minn. 465 (535), but that case has been so far modified in subsequent decisions that it is of little value as authority for the proposition for which defendant seeks to use it.[2]

Use of the term "mutuality" often leads to confusion in that the word may have several meanings in dealing with contracts.[3] As used here, the essence of defendant's argument is that, inasmuch as defendant could not demand that plaintiff deliver any quantity of material or recover damages if he failed to do so under exhibit 1, it must follow that the contract is unenforceable. The rule relied upon by defendant is often stated in the axiom that the promise of both parties is binding or neither is binding.[4]

What the argument really amounts to is that the contract is lacking in consideration.[5] The mere fact that ability to perform depends on the approval of the engineers of the material which plaintiff had does not, of itself, constitute a lack of consideration. In such case, a promise by defendant to accept the material which plaintiff had, which would be

---

[2]See, Pittsburgh Plate Glass Co. v. Paine & Nixon Co. 182 Minn. 159, 234 N. W. 453; 10 Minn. L. Rev. 584; 15 Minn. L. Rev. 469.

[3]1 Williston, Contracts (3 ed.) § 105A; 15 Minn. L. Rev. 470.

[4]1 Williston, Contracts (3 ed.) § 103.

[5]See, 14 Minn. L. Rev. 814.

approved by the engineers, is a sufficient consideration to support an implied promise on the part of plaintiff to deliver such material when approved by the engineers.[6] Nor does the mere fact that the engineers may not approve any such material defeat the consideration for the contract.

The correct rule[7] is stated in 1 Corbin, Contracts, § 148, p. 483:

"Another illustration is an agreement to buy and to sell on stated terms, the promises of both parties being expressly conditional on the granting of a government 'permit' or the expression of assent or approval by a third party. Each promise is a sufficient consideration for the return promise; and if one party repudiates or otherwise prevents the assent or the 'permit' an action for damages is maintainable. Such a contract is not an 'aleatory' contract."

In this case the jury could find (on proper instructions) from the instrument itself and the extrinsic evidence offered to show what the intention of the parties was that they intended to contract to bind plaintiff to deliver so much subgrade material as he had available as would be approved by the engineers[8] and the defendant to accept such material. It would seem that on the record before us any other finding would defeat recovery.

■ Nor do we believe that the admissions in the pleading or other stipulations of the parties remove the question of determining what was the intention of the parties, as expressed in exhibit 1, from the realm of a jury question. Much conflicting evidence was received on that phase of the case. Under the circumstances, the construction of the agreement should have been left to the jury. If necessary, defendant should have been permitted to amend its pleading.

Plaintiff seems to agree with interpretation (b). In his brief he says:

"To determine what the respondent was obligated to do under this

---

[6]We omit a discussion of the reasonableness of the time of seeking or obtaining such approval.

[7]See, for instance, McMullan v. Dickinson Co. 63 Minn. 405, 65 N. W. 661, 663.

[8]Minneapolis Mill Co. v. Goodnow, 40 Minn. 497, 42 N. W. 356, 4 L. R. A. 202.

contract becomes apparent from reading it. It was required to furnish and deliver the material which it had and which met the approval of the Corps of Engineers * * *. Its obligation was not—as appellant states in the aforementioned paragraph—to secure material which would comply, but was merely to deliver and supply that which it had and which would comply with the specifications. * * *

* * * * *

"The quantity of material available from the Christofferson pit—the material upon which these tests were apparently run—was approximately 35,000 yards[9] * * *. If this was all of the material which respondent had which could meet the necessary qualifications under the specifications, this is all of the material which respondent could be forced to deliver and, therefore, this is the quantity upon which he could now base a claim for damages. However, the evidence does not disclose that further quantities were available to respondent."

The difficulty with the last statement quoted above is that there is no evidence in the record to show that any material other than that to be taken from the Christofferson pit was approved by the engineers or that such approval could have been obtained. The weakness of plaintiff's position is that the case was not submitted to the jury on the theory that the contract could be construed to mean that plaintiff could deliver and defendant would be obligated to accept only such material as plaintiff had available which was approved by the engineers. The court determined as a matter of law that the contract called for a delivery of all the material necessary to complete the entire contract, and plaintiff has simply failed to prove that he could perform on that theory. Consequently, on an "all-or-nothing" basis, the evidence is wholly lacking in establishing one of the essential elements necessary to a recovery.

As a result of the court's instruction, the jury was permitted to base its verdict on a loss of hauling 76,472 yards of material, when the evidence, at best, shows that plaintiff was in a position to deliver only about 28,000 yards. The evidence as to the loss per yard varies all the way from nothing to about 36 cents per yard. Kolojeski claims that he

---

[9] Actually it was slightly more than 28,000 after compaction.

lost money even though he was paid a higher price than is provided in exhibit 1. We have no way of knowing how the jury arrived at its verdict. It seems obvious from the court's memorandum that plaintiff was permitted to base his damages, in part, on material to be procured from the Stebner pit, even though the record is devoid of any evidence that material taken from that pit was or would have been approved by the engineers. Inasmuch as there must be a new trial, we need not go into more detail on the issue of proof of damages. If, upon a new trial, plaintiff succeeds in establishing a contract upon which he may be permitted to recover at all, the most that he could recover would be an amount computed on the quantity of approved material which he had or of which he could have obtained approval of the engineers, multiplied by the loss he has sustained per yard, in place and compacted. The errors of which defendant complains relating to proof of damages are not apt to occur on a new trial, and it would serve no useful purpose to further discuss them here.

We are of the opinion that the court erred in construing the contract as a matter of law and in permitting the jury to base damages on the total yardage required to complete the contract in the absence of evidence establishing that plaintiff had available enough material to perform the entire contract, which was approved or would have been approved by the engineers.

Reversed and new trial granted.