# TRANSPORT INDEMNITY COMPANY v. DAHLEN TRANSPORT, INC., AND OTHERS.

161 N. W. (2d) 546.

August 30, 1968—No. 40,416.

*Fred N. Peterson, Jr.,* and *Peterson & Popovich,* for appellants.

*Peter F. Walstad* and *Mordaunt, Walstad, Cousineau & McGuire,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

SHERAN, JUSTICE.

Appeal from a judgment and from an order denying defendants' motion for a new trial.

The plaintiff, Transport Indemnity Company (hereinafter called the insurer), is an insurance company dealing primarily in insurance for the trucking industry. The defendants, Dahlen Transport, Inc., Dahlen Transport of Iowa, Inc., Trucking Properties, Inc., and Trucking Equipment, Inc. (hereinafter called the insured), are trucking companies under a common control.

An action to recover the premium due for liability insurance coverage resulted in a directed verdict for plaintiff. The insured now contends that the verdict includes the following sums[1] improperly charged to its account in determining retrospectively the amount owing by it:

(1)　$14,725 paid out by the insurer as losses to persons making claims against the insured (contested in part);[2]

(2)　$2,550 charged by the insurer for what is termed "unallocated expense."

The question for decision in this court is whether the insured is entitled to question these charges and, if so, whether the trial court properly held in the insurer's favor with respect to these items as a matter of law.

A brief explanation is needed to put these questions in understandable context. Four separate policies of liability insurance were issued by plaintiff to defendants. Of the four policies, three in combination provided coverage against liability claims of a specified kind between $5,000 and $1,000,000 for each occurrence, with the premium for this coverage being a fixed percentage of the insured's gross operating revenues during the coverage period.

These three policies were supplemented by a fourth policy which affords coverage up to a maximum of $5,000 for each occurrence. It is the formula included in this fourth policy for the retrospective determination of premiums payable that gives rise to the present controversy. This is so

---

[1] Approximate figures are used for convenience of expression.

[2] The record does not make clear the exact amount of this total which the insured contests.

because in addition to a premium based on gross revenues, the insured assumes a premium obligation to be determined retrospectively at times fixed by the policy. That obligation, in the language of the policy, is to include "[i]ncurred losses, subject to a limit of $5,000 each occurrence and loss expense applicable under this policy." The words "incurred losses" are defined to mean "net losses paid by the company." The words "loss expense" are defined to mean "all adjustment expense incidental to losses reported to the company." The sum of $14,725 to which reference has been made represents "incurred losses" paid by the insurer under this policy during the accounting period involved. The sum of $2,550 in controversy was charged by the insurer as "loss expense."

■ From the inception of this litigation, the insured has contended that the premium charge based upon losses paid to persons making claims against the insured was not recoverable by the plaintiff because "the terms of the insuring agreement require that any such loss or expense payments must be reasonable, and that certain of those charged against it by the plaintiff were unreasonable and should not form a portion of the premium charged against it." The responsive position of the plaintiff has been that "the policy provisions give it the right to make the sole and exclusive determination as to the appropriateness or the propriety in the making of any payments for losses or expenses." In view of this statement of the issue as set out in the pretrial order of Referee James R. Bettenberg, we believe, notwithstanding some confusion in the pleadings, that the issue was properly presented to the trial court and preserved for consideration by this court upon appeal.

It is not disputed that the insurer actually paid the sum of $14,725 in settlement of claims against the insured during the accounting period, and if its right to make settlement of such claims is absolute and unqualified, the insured has no basis for complaint with respect to this item.

The insurer contends that its right to make settlements under the terms of this fourth policy on behalf of the insured is absolute because by the terms of the policy it is empowered "[t]o investigate, negotiate settlement and defend suits pertinent to losses reported to the company." It contends that this provision in the policies not only imposes on the insurer a duty to perform in the agreed manner, but also grants to it the right to

decide whether to settle or defend any particular loss, citing in support of this proposition Long v. Union Ind. Co. 277 Mass. 428, 178 N. E. 737, 79 A. L. R. 1116; Bankers Ind. Ins. Co. v. A. E. A. Co. 32 N. J. Super. 471, 108 A. (2d) 464; Abrams v. Factory Mutual Lia. Ins. Co. 298 Mass. 141, 10 N. E. (2d) 82; and 7A Appleman, Insurance Law and Practice, § 4711.

It may be conceded, for present purposes at least, that an insurer does have an absolute right to settle claims made against its insured and covered by the terms of its policy when the funds of the insurer are being used to accomplish the settlement. But the situation is different where, as here, the company in settling claims for amounts up to a maximum of $5,000 for each occurrence is entitled to charge the amount of such incurred losses paid by it to the account of the insured as a retrospective premium. In effect, therefore, the insurer is making settlement of this category of claims with the insured's money. In substance, it is acting as the insured's agent for the purpose of investigating and settling claims which with respect to any one occurrence do not exceed $5,000.

If the fourth policy were the only one involved, the case would be one where, in effect, an agent had advanced money for his principal in conformity with written authority. In such event, arguably, the agent should recover the advancement unless the principal establishes affirmatively[3] that the payments were made in violation of a duty of loyalty and good faith[4] which such a relationship implies. But the problem at hand is not that simple. Under the policies in combination, the insurer has an excess exposure whenever a claim is asserted against the insured and for that reason its judgment in making these settlements raises to some extent a conflict of interest.

An illustration will clarify the point. Assume a person sustains personal injuries by reason of the conduct of the insured under circumstances covered by the four policies and makes a claim against the insured. Unless the claim is settled, the amount to which the claimant is entitled will

---

[3] See, Bangs v. Hornick (C. C. D. Minn.) 30 F. 97.

[4] See, for example, Doyen v. Bauer, 211 Minn. 140, 300 N. W. 451; 3 C. J. S., Agency, § 320(g); 3 Am. Jur. (2d) Agency, § 337.

be uncertain until finally determined, possibly by a jury. So long as this claim does not result in a judgment against the insured exceeding the sum of $5,000, the insurer has no involvement except that resulting from its obligation to investigate, negotiate settlement, and defend. Anything it pays voluntarily or under legal compulsion up to a maximum of $5,000 on account of one accident can be charged to the insured as retrospective premium. But if this claimant should ultimately recover an amount in excess of $5,000, the insurer (so long as the total amount does not exceed $1,000,000) must pay the excess and this excess payment cannot be charged to the insured as a retrospective premium. It is in the best interests of the insurer, therefore, to make a settlement of a claim of this kind whenever it can do so under the terms of the fourth policy, thereby eliminating its exposure under the other policies.

And under the particular circumstances of this case, the conflict of interest inherent in the arrangement is exacerbated by plaintiff's claim that the retrospective-premium-payment provisions of the fourth policy entitled the insurer to charge against the insured not only the amount paid by it to the claimant, but an additional amount said to represent the expense incurred in investigating and adjusting the loss but fixed as a percentage of the amount paid by it in settlement.

Because of the conflict of interest which is inherent in this arrangement, we believe, in the absence of any directly controlling precedent of which we are aware, that the right of the insurer to collect from the insured in the form of a retrospective premium amounts paid out by it as losses should be contingent upon proof by the insurer that the settlements so made were in good faith and reasonable. The insurer, having been charged with the responsibility for investigating and adjusting the loss, is in possession of the relevant information upon which a determination of reasonableness and good faith must be based. The insured, having delegated the right and duty of investigation and settlement to the insurer, and having agreed to pay the expense incurred in carrying out this assignment, has, by the terms of its insurance contract, put the information critical to the issue of reasonableness and good faith in the exclusive possession of the insurer. If the insured is to pay out as a retrospective premium the amounts paid by the insurer in settlement of

liability claims under circumstances where, theoretically at least, the settlement of the claim has been beneficial to both (to the insured to the extent of its exposure up to the $5,000 maximum and to the insurer to the extent of its exposure for any amount in excess of that), the insured should be entitled, it seems to us, to have the insurer produce the information pertinent to the reasonableness and good faith of the settlement and assume the burden of proof on the issue.

The conclusion which we have reached finds some inferential support in our decisions relating to the obligations of an insurer in settlement situations where the amount of a claim exceeds policy limits;[5] in the line of authority which holds that an attorney whose interest in a given transaction conflicts in some respects with that of his client has, in the event of resulting litigation, the burden of proving his fairness and good faith;[6] and the generally accepted principle that an agent with interests adverse to those of his principal has the burden of proving fair dealing even though the conflict of interests was apparent.[7]

From this expression of our views, it follows that it was error for the trial court to direct a verdict in plaintiff's behalf in respect to the $14,750 item claimed as a retrospective premium on account of claims paid by the insurer. The record fails to disclose the circumstances under which these payments were made and there is no basis in fact or opinion for a determination that the insurer, acting in a situation where its interests and those of its insured were in possible conflict, made the settlements reasonably and in good faith.

■   The trial court determined as a matter of law that the words "loss

---

[5] See, Boerger v. American General Ins. Co. 257 Minn. 72, 100 N. W. (2d) 133; Larson v. Anchor Cas. Co. 249 Minn. 339, 82 N. W. (2d) 376; Lawson & Nelson Co. v. Associated Ind. Corp. 204 Minn. 50, 282 N. W. 481; Mendota Elec. Co. v. New York Ind. Co. 169 Minn. 377, 211 N. W. 317; Annotation, 40 A. L. R. (2d) 168. See, also, Bell v. Commercial Ins. Co. (3 Cir.) 280 F. (2d) 514; Liquid Transporters, Inc. v. Travelers Ins. Co. (6 Cir.) 308 F. (2d) 809.

[6] Mercer v. McHie, 141 Minn. 144, 169 N. W. 531; Colstad v. Levine, 243 Minn. 279, 67 N. W. (2d) 648.

[7] Restatement, Agency (2d) § 390, comment *g*; Id. § 393, comment *d*. Note, also, 3 C. J. S., Agency, § 139.

expense" as used in the policy embraced not only expenses directly traceable to the investigation of claims made as against the insured, termed "allocated expense," but also an amount termed "unallocated expense" representing a share of the general expense of running and administering the claims department of the insurer. William H. Sundahl, treasurer and assistant secretary of the insurer, called as a witness by the plaintiff, gave testimony which, liberally construed, could be said to support a finding that the words "loss expense" as used in this policy of insurance have a generally accepted technical meaning in the insurance industry which embraces both "allocated expense" and "unallocated expense" and that the amounts charged against the insured as "unallocated expense" were reasonable in light of the practices in the industry and the course of dealing between the parties to this action.

In Leslie v. Minneapolis Teachers Retirement Fund Assn. 218 Minn. 369, 373, 16 N. W. (2d) 313, 315, and again in Noreen v. Park Const. Co. 255 Minn. 187, 190, 96 N. W. (2d) 33, 36, we said:

"The rule is well established that ordinarily the construction of a writing which is unambiguous is for the court, particularly when the intention of the parties is to be gained wholly from the writing. However, if the language is ambiguous, resort may be had to extrinsic evidence, and construction then becomes a question of fact, unless such evidence is conclusive. * * * Ordinarily, the question whether the language of a contract is ambiguous is one of law for the court. * * * The extrinsic facts which may be considered in aid of construction are ordinarily questions for the court. * * * It is also true that where parties to a contract have given it a practical construction by their conduct, as by acts in performance thereof, such construction may be considered by the court in determining its meaning and in ascertaining the mutual intent of the parties. * * * Where such extrinsic evidence is conclusive and undisputed and renders the meaning of the contract clear, its construction again becomes a question of law for the court."

We agree with the insured that the words "loss expense" as used and defined in the policy are ambiguous as applied to the practice followed by the insurer in treating a fixed percentage of the sums paid by it on

account of claims made against the insured as "loss expense." But the extrinsic evidence offered in behalf of the plaintiff stands undisputed on the present record, justifying the determination of the trial judge that the ambiguous language of the contract, clarified by the extrinsic evidence offered by the plaintiff, gave the words "loss expense" a meaning as between these parties which included not only the items charged as "allocated expense," but the "unallocated expense" as well. We believe, however, that upon a retrial, the insured should be afforded the opportunity of presenting any extrinsic evidence it may have relevant to this issue so that it can then be redetermined in accordance with the principles above quoted.

We believe that the insured's contention that plaintiff failed to prove its case because it did not show that it had furnished the insured with a safety and accident prevention program as required by the policies of insurance is without merit. There is no indication in the pleadings that the insured claimed a failure in this respect on the part of plaintiff, and the statement of issues which was formulated as a result of the pretrial conference strongly suggests that this contention was an afterthought. The trial court properly refused to take evidence on this claim at the time of trial. In the event of retrial, it may be possible for the insured, upon a proper showing, to amend its pleadings and assert this defense.

Reversed and new trial granted.