Daniel F. OTTEN, Appellee,

v.

The STONEWALL INSURANCE COMPANY, Appellant.

No. 74–1497.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1974.

Decided Feb. 18, 1975.

---

2. 9 Wright & Miller, Federal Practice and Procedure: Civil 554–5, note 80.

144

R. D. Blanchard, Minneapolis, Minn., for appellant.

Vincent E. Johnson, Minneapolis, Minn., for appellee.

Before MATTHES, Senior Circuit Judge, ROSS and STEPHENSON, Circuit Judges.

ROSS, Circuit Judge.

Daniel F. Otten, a resident of Minnesota, brought this diversity action seeking to recover $25,000 from The Stonewall Insurance Company (Stonewall) allegedly due him under a pilots disability insurance policy issued on December 1, 1969. After a trial to a jury a verdict for Otten was returned, upon which judgment was entered. Stonewall's post-trial motions for judgment n. o. v. or a new trial were denied by the district court,[1] and this appeal followed. We reverse and remand for a new trial because we are convinced that the trial judge committed prejudicial error in his instructions to the jury.

In 1961 Otten, who was a pilot for North Central Airlines, purchased a pilots disability insurance policy from Orion Insurance Company, Ltd., of London, England. This policy provided that if at any time while the policy was in effect Otten sustained accidental bodily injuries or contracted any sickness or disease which permanently prevented him from carrying on his occupation as a pilot, he was to be paid $25,000.

In 1962 Otten was involved in an airplane crash in which he sustained several injuries, the most severe of which were fractures of both his ankles. However, Otten was not permanently disabled and returned to his occupation as a pilot for North Central in 1964. In 1968 Otten was involved in another airplane accident. He was not injured, but he was grounded by North Central pending investigation of the incident. He has not flown as a commercial pilot since that time, although until 1970 he maintained his qualifications to do so. He took check flights and continued to take and pass the required semiannual physical examination until February 27, 1970, when the flight surgeon found him physically unfit to continue as a commercial pilot because of osteoarthritis which had developed in his ankles at the site of his old injuries.

In the meantime, in 1967 Stonewall had taken over the disability coverage previously provided by Orion Insurance Company, Ltd., and had issued a new policy to Otten which contained a continuity of coverage clause which was designed to provide coverage for disability due to injury, sickness or disease which had commenced at any time after the original Orion policy was issued in 1961.

In 1969 Stonewall offered those pilots who already owned a disability policy the opportunity to apply for $25,000 in supplemental coverage. Otten applied for this additional coverage on October 30, 1969, and the supplemental policy was issued to him with an effective date of December 1, 1969.

When Otten was found disabled by the flight surgeon three months later, February 27, 1970, Stonewall paid the $25,000 due under the original policy since the osteoarthritis had commenced after 1961, the effective date of that policy under its continuity of coverage clause. However, Stonewall refused to pay the $25,000 claimed under the supplemental policy because it contended that the disease which resulted in Otten's disability had been contracted prior to the effective date of the supplemental policy, December 1, 1969.

At the trial Otten did not initially appear to disagree with Stonewall's contention that December 1, 1969, was the date after which the osteoarthritis had to oc-

1. The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri, sitting by designation in the District of Minnesota.

cur; and the evidence adduced by both parties went principally to the question of when and how the disabling disease first started. However, the possibility of an ambiguity in the supplemental insurance contract arose when jury instructions were prepared.

Without resolving whether the policy was, in fact, ambiguous or how it should be interpreted if it were so, the trial judge gave the following instruction to the jury:

> You are instructed that the language of a policy must be clear and unambiguous, and any reasonable doubt as to its meaning must be resolved in favor of the insured.

The trial court also instructed the jury that the policy provided that:

> In consideration of the payment of the premium as provided for in this policy, and in accordance with the authority granted in writing by the insured, it is hereby understood and agreed that the insurance afforded by this policy replaces all such insurance previously provided under Certificate of Insurance affected with Orion Insurance Company, Limited, of London, England. In the event the insured is permanently prevented from carrying on his occupation after the effective date of this policy, and claim is made thereunder—hereunder—*no denial of coverage shall be made by the company for loss arising from a condition or disability having its origin at any time while the Certificate of Insurance of the Orion Insurance Company, Limited, was in full force and effect.* (Emphasis supplied.)

Nowhere in the instructions did the court point out what was ambiguous about the supplemental policy[2] or any of the other familiar rules of construction. Otten's counsel argued the substance of these instructions to the jury at some length.

On appeal a party may not assign as error the giving of an instruction unless he objected thereto before the trial court. Alabama Great Southern R. R. v. Chicago & Northwestern Ry., 493 F.2d 979, 984 (8th Cir. 1974); Fed.R.Civ.P. 51. A search of the record in the instant case does not reveal a specific objection to the instruction first stated above. However, Stonewall did specifically object to the giving of the instruction which included language from the continuity of coverage provision of the 1967 policy hereinbefore quoted because it "just has no application to the supplemental policy" which was the subject of this litigation. Stonewall further told the trial court that this continuity clause of the 1967 policy "should not be used as a basis for creating an ambiguity in the [1969] policy where none exists."

Of Rule 51 Professor Moore has said:

> The Rule does not require formality, and it is not important in what form an objection is made or even that a formal objection is made at all, as long as it is clear that the trial judge understood the party's position; the purpose of the Rule is to inform the trial judge of possible errors so that he may have an opportunity to correct them. (Footnote omitted.)

5A J. Moore, Moore's Federal Practice ¶ 51.04, at 2521 (2d ed.).

We are satisfied that the purpose of the Rule was fulfilled in this case. The trial judge was given sufficient notice of Stonewall's position to the effect that there was no ambiguity in the supplemental policy which would necessitate reference to the provisions of the 1967 policy or permit any instruction on ambiguity whatsoever.

---

2. Apparently Judge Meredith felt that there was a possible conflict in the provisions of the supplemental policy based on the fact that the first clause of that policy said: "This endorsement is hereby attached to and made a part of [the basic 1967 policy issued to Otten]." This could be read as incorporating the continuity clause of the 1967 policy into the supplemental policy and providing supplemental coverage for disability caused by injury, sickness or disease commencing anytime after 1961. However, as discussed *infra*, to read the policy in this manner would be to create an ambiguity where the clear intent of the parties derived from other language in the policy shows that one did not exist.

It is our view that the giving of these instructions in the context of this case was erroneous for three reasons. First, it is well established in Minnesota, the law of which state is applicable in this action, that the initial determination of whether or not a contract contains an ambiguity is for the court to make as a matter of law. Transport Indemnity Co. v. Dahlen Transport, Inc., 281 Minn. 253, 161 N.W.2d 546, 550 (1968); Telex Corp. v. Data Products Corp., 271 Minn. 288, 135 N.W.2d 681, 684 (1965); 1 Couch on Insurance 2d § 15:3, at 639 (1959). Yet the trial judge here did not actually make this determination. Rather, he simply gave the instructions which, in effect, gave the jury an open invitation to read an ambiguity into the policy, whether or not one was there.

Secondly, even if there were an ambiguity in the contract of insurance, it is for the court to construe the contract unless its interpretation is dependent upon the resolution of controverted extrinsic evidence. Transport Indemnity Co. v. Dahlen Transport, Inc., *supra*, 161 N.W.2d at 550; Honeymead Products Co. v. Aetna Casualty & Surety Co., 275 Minn. 182, 146 N.W.2d 522, 529 (1966); 4 S. Williston, Law of Contracts § 616, at 663 (3d ed. 1961); 1 Couch on Insurance 2d § 15:3, at 638–639 (1959). There was no such extrinsic evidence in the instant case, so that the instructions were erroneous in allowing the jury rather than the judge to construe the alleged ambiguity.

Finally, the entire question of ambiguity should not have been injected into these proceedings because a fair reading of the 1969 policy demonstrates that it is unambiguous as to the date after which any disabling injury, sickness or disease had to commence. The application for the additional insurance, which was made a part of the policy, contains the following statement directly above Otten's signature:

I understand and agree that the policy, when and if issued to me, will not cover any disability which may result from any sickness, disease or injury which I may have contracted or suffered before the effective date of the policy.

Additionally, the supplemental policy, which was made a part of the basic 1967 policy and which was effective December 1, 1969, contained its own incontestability clause. This clause provided that no claim for loss or disability commencing after two years from the effective date of the policy would be reduced or denied because of a disease or physical condition which existed prior to the effective date and which had not been specifically excluded from coverage. The incontestability clause then went on to state:

The incontestable provision contained herein shall apply only with respect to the application made to secure the additional insurance granted hereunder and the benefits of the Premium Schedule specified above.

The fact that the supplemental policy was called an "endorsement" and was "made a part of" the basic 1967 policy with its continuity of coverage clause does not detract from these unambiguous expressions of intent that the supplemental coverage would apply only to disability caused by injury, sickness or disease contracted or suffered after December 1, 1969. The statement on the application makes this explicitly clear, while the incontestability provision demonstrates that the continuity clause of the 1967 policy was not to be controlling. If it were, then there would be no need for an incontestability clause in the supplemental policy.

To conclude that there is an ambiguity in this supplemental coverage policy would conflict with the well settled rule that a court has no right to read an ambiguity into the plain language of a policy in order to provide coverage. Farkas v. Hartford Accident & Indemnity Co., 285 Minn. 324, 173 N.W.2d 21, 24 (1969); Bobich v. Oja, 258 Minn. 287, 104 N.W.2d 19, 24 (1960). And, in the absence of any ambiguity, the language used must be given its usual and accepted meaning, so as to give effect to the intention of the parties as

it appears from the entire contract. Bobich v. Oja, *supra*, 104 N.W.2d at 24. That intention, as expressed in the language quoted above from the supplemental coverage contract, was clearly that the additional $25,000 would be paid only if the disability was caused by injury, sickness or disease contracted or suffered after the effective date of December 1, 1969.

For the foregoing reasons we conclude that the instructions given regarding ambiguity and the continuity provision of the 1967 policy were erroneous. Because the jury may have relied upon these erroneous instructions in reaching its verdict, we reverse the judgment of the district court and remand the cause for a new trial.[3]

---

**3.** Appellant Stonewall asks that, instead of remanding for a new trial, this Court grant judgment n. o. v., as it is empowered to do under Fed.R.Civ.P. 50(d). Neely v. Martin K. Eby Construction Co., 386 U.S. 317, 324, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967). However, we decline this invitation in the instant case. While the evidence adduced at the trial indicates very strongly that the disabling osteoar-thritis had its onset prior to December 1, 1969, we are not prepared to rule as a matter of law that a jury could not reasonably conclude otherwise. In this situation it is proper to remand for a new trial. *See* Ziman v. Employers Fire Insurance Co., 493 F.2d 196, 200 (2d Cir. 1974); Carpenters Local 978 v. Markwell, 305 F.2d 38, 48 (8th Cir. 1962).