Mark B. WESSMAN and Mary Wessman Stenbach, Appellants,

v.

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Appellees.

No. 90–5108.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1990.

Decided March 29, 1991.

Dale Wagner, Minneapolis, Minn., for appellants.

James Langdon, II, Minneapolis, Minn., for appellees.

Before McMILLIAN and FAGG, Circuit Judges, and ARNOLD,* District Judge.

MORRIS SHEPPARD ARNOLD, District Judge.

Mark B. Wessman and Mary Wessman Stenbach are the adult children of Germaine G. Wessman and were named as

* The HONORABLE MORRIS S. ARNOLD, United States District Judge for the Western District of Arkansas, sitting by designation.

beneficiaries on their mother's application for life insurance from appellee, Massachusetts Mutual Life Insurance Company. The Wessmans appeal from the district court's grant of summary judgment for the insurance company, contending that the district court erred in holding that a signed Statement as to Insurability was required for the insurance policy to be fully effective. We agree that the district court erred in granting summary judgment and remand to the district court for further proceedings consistent with this opinion.

## I.

On November 11, 1988, Germaine Wessman and her sister Lorraine Holst met with an agent from Massachusetts Mutual Life Insurance Company. Mrs. Wessman decided to apply for a policy and rider which would entitle her to a death benefit that year of $284,690 for a premium payment of $75,000; premiums in subsequent years would be paid by dividends and the death benefit would decrease over time. On the same day, Mrs. Wessman gave the agent a check for $2,000, and the agent assisted her in drafting a letter directing the release of over $73,000 in certain money-market funds to pay the rest of the premium. The agent also helped Mrs. Wessman complete the application. After completing it, Mrs. Wessman read and signed the application and a "Conditional Receipt." But, as the district court found, the agent was herself either unfamiliar with or did not understand the terms of the Conditional Receipt and so did not go over this document with Mrs. Wessman, nor did she leave a copy of the application or the Conditional Receipt with her. The company later reviewed Mrs. Wessman's application, including the results of a prior medical examination obtained in connection with an earlier application for insurance, and, according to appellee, "conditionally determined that Mrs. Wessman was an acceptable risk." The policy was approved and sent to the insurance agent on December 2, 1988.

After receiving the policy on December 5, 1988, the agent arranged to meet Mrs. Wessman on December 15, 1988. The purpose of this meeting was to deliver the policy and to have Mrs. Wessman sign a form entitled "Statement as to Insurability," certifying that, among other things, she had not suffered any illness or injury in the period since applying for the policy. But when the agent called on December 15 there was no answer, for on that morning Mrs. Wessman had slipped in her bathtub and drowned. The policy was therefore never delivered and the Statement as to Insurability was never signed.

Following Mrs. Wessman's death, Massachusetts Mutual conducted an investigation and found that the death was accidental and not due to any pre-existing medical condition. At that point the Insurance Company decided that it owed death benefits of $60,000 under the Conditional Receipt; it also refunded the unearned portion of the premium deposit but denied that it was liable for benefits under either the policy or the rider. On cross-motions for summary judgment, the district court entered judgment in favor of Massachusetts Mutual and later denied a motion for reconsideration. This appeal followed.

## II.

In considering a summary judgment motion the role of the court is not to weigh the evidence but to determine whether a genuine factual conflict exists. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). "In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences to be drawn from the facts." *Id.* In reviewing the district court's grant of summary judgment, this court applies the same standard as the district court applied.

The Conditional Receipt signed by Germaine Wessman stated that the policy would become effective only if all of four conditions were met, two of which the court believes are in issue here. The Conditional Receipt states, in relevant part:

The insurance (or reinstatement) applied for will become effective ONLY IF all of the following conditions are met:

1. All required parts of the application and all medical examinations and tests we require have been completed within sixty days of the date of this receipt.

2. Each person proposed for insurance is an acceptable risk under our limits, rules and standards for the basic policy plan and amount of insurance applied for (or to be reinstated) and for any rider or agreement applied for (or to be reinstated).

\*    \*    \*    \*    \*    \*

Massachusetts Mutual argues that the $284,690 policy is not due because Mrs. Wessman failed to sign the Statement as to Insurability. It argues, and the district court agreed, that the Conditional Receipt unambiguously required that the Statement as to Insurability be signed in order for conditions one and two to be met. In brief, the insurance company contends that since the Statement as to Insurability was described on its face as a "part of the application," the Statement was indeed a "required part of the application" within the meaning of condition one. The company also maintains that the Statement was necessary for a determination of whether or not Mrs. Wessman was, under condition two, an "acceptable risk" because the Statement provided information used by the company to perform its underwriting function.

A. Reasonable Expectations Doctrine

■ We turn first to a consideration of whether Minnesota's doctrine of reasonable expectations requires submission of this case to the jury.[1] The court below found that "no applicant could reasonably believe that her policy would be effective on the date of the application." We respectfully conclude, however, that this finding misap-

prehends the correct question, for the district court should have considered whether Mrs. Wessman could have reasonably believed that the policy was in effect before her death, that is after being told that she need not have another medical examination and upon anticipation of delivery of the policy that day. In either event, we believe that the district court erroneously failed to apply the reasonable expectations doctrine as enunciated by the Supreme Court of Minnesota in *Atwater Creamery Co. v. Western National Mutual Ins. Co.*, 366 N.W.2d 271, 276–277 (Minn.1985). In *Atwater Creamery*, which is the leading Minnesota case on the subject, the court held that because of unique circumstances surrounding a layperson's purchase of insurance,[2] the "objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though a painstaking study of the policy provisions would have negated those expectations." *Id.* at 277, quoting Keeton, *Insurance Law Rights at Variance with Policy Provisions*, 83 Harv.L.Rev. 961, 967 (1970).

Of course, the doctrine does not "remove from the insured the responsibility to read the policy but at the same time it does not hold the insured to an unreasonable level of understanding of the policy." *Hubred v. Control Data Corporation*, 442 N.W.2d 308, 311 (Minn.1989) (citing *Atwater Creamery*, 366 N.W.2d at 278). It does this by enforcing the insured's expectations of coverage where those expectations are reasonable under the circumstances of the policy's negotiation and purchase. *Hubred*, 442 N.W.2d at 311; *Atwater Creamery*, 366 N.W.2d at 278. The actual terms of the policy are but one factor to be considered in determining the insured's reasonable expectations.[3] "Other factors to

---

**1.** The law of Minnesota governs the resolution of the insurance issues in this diversity case. *See, e.g., Auto Owners Insurance Co. v. Jensen,* 667 F.2d 714, 717 (8th Cir.1981).

**2.** These circumstances are generated by (1) the disparity of bargaining power between insurance companies and their customers; (2) the layperson's inability to read and understand an insurance contract; and (3) the fact that pur-

chasers of insurance rely on the agent or the company to provide a contract containing appropriate coverage. *Atwater Creamery,* 366 N.W.2d at 277. *See also Grinnell Mutual Reinsurance Co. v. Wasmuth,* 432 N.W.2d 495 (Minn. Ct.App.1988).

**3.** In determining whether or not the reasonable expectation doctrine does apply, we note that in *Atwater Creamery,* the Minnesota Supreme Court adopted Professor's Keeton's view that an

be considered are the presence of ambiguity, language which operates as a hidden exclusion, oral communications from the insurer explaining important but obscure conditions or exclusions, and whether the provisions in a contract are known by the public generally." *Hubred*, 442 N.W.2d at 311 (citing *Atwater Creamery*, 366 N.W.2d at 278). The question of whether or not the insured's expectations were "reasonable" is ordinarily an issue of fact for the jury. *Atwater Creamery*, 366 N.W.2d at 278.

With these principles in mind, we turn to a consideration of the term "application" as used in the Conditional Receipt. The insurance company claims that the Statement as to Insurability was an essential part of the "application" and thus that condition one of the Conditional Receipt is unfulfilled. While the form entitled "Statement as to Insurability" does contain language stating that it is a "part of the application," such language is hardly conclusive here as Wessman never saw the Statement as to Insurability and so could not have read the above language. The form was not even sent to the agent until after Mrs. Wessman had filled out the application. What is more, neither the Conditional Receipt nor the form entitled "APPLICATION" makes any mention of the Statement as to Insurability. It is not at all clear to us what the term "application" would mean to a person who had just spent several hours filling out a lengthy form with the title "APPLICATION" clearly stated in bold block print, if it were not that form itself. In this context, we note that the application itself says only:

> THE APPLICATION—This is Part 1 of an application for new life insurance (or reinstatement). The application also includes any Part 2 that may be required and any amendments or supplements to either Part. To the best of the knowledge and belief of the person(s) signing below, all statements in this Part 1 are complete and true and were correctly recorded. Each person signing below adopts all the statements made in the application and agrees to be bound by them.

This language does not help to clarify the term at issue. Mrs. Wessman did complete Part 2 of the application. Her estate maintains that no additional materials were provided either to amend or to supplement the application, and that she could not be expected to know that the Statement as to Insurability was a part of the application. We believe that in these circumstances even the most perspicacious reader might not have understood that the Statement as to Insurability was a part of, or supplement to, the application.

Of course there is still the question of whether or not Mrs. Wessman was an "acceptable risk" as required by condition two of the Conditional Receipt. This term can be construed in several ways. The insurance company claims that Mrs. Wessman's signature on the Statement as to Insurability was needed to satisfy this condition because the collection of up-to-date information on an insurance applicant is necessary to complete the underwriting tasks. The Wessmans argue, however, that the company's approval of the application in its Home Office may have in fact satisfied that requirement; or, alternatively, that Mrs. Wessman could have reasonably concluded that she was an "acceptable risk" upon being informed that another medical examination was not required of her.

█ With respect to both terms, the agent testified that she did not explain the terms of the Conditional Receipt, apparently because she did not understand them herself. It is unlikely, moreover, that the

---

ambiguity ought not be a condition precedent to the application of the reasonable expectations doctrine, but that:

> ambiguity in the language of the contract is not irrelevant ... but becomes a factor in determining the reasonable expectations of the insured, along with such factors as whether the insured was told of important, but

obscure conditions or exclusions and whether the particular provision in the contract at issue is an item known by the public generally.

*Atwater Creamery*, 366 N.W.2d at 278, citing Keeton, *Insurance Law Rights at Variance with Policy Provisions*, 83 Harv.L.Rev. 961, 967 (1970).

public is generally aware that a Statement as to Insurability is either a part of an insurance "application" or required by the insurance company's underwriting department for a determination that an applicant is an "acceptable risk." Finally, there was evidence that the insurance agent told Mrs. Wessman that she was "covered." While the company is not bound by the statements of this agent, such a statement may be considered by the fact-finder in determining whether, in the light of all the circumstances, Mrs. Wessman's expectations of coverage were reasonable.

In short, the circumstances of this case call for the application of *Atwater Creamery*. An ordinary reader of the policy could reasonably conclude after (1) being exempted from further medical examinations, (2) filling out Parts 1 and 2 of a form entitled "APPLICATION," and (3) being informed that she was "covered," that she was indeed covered. The policy contains nothing that refers to the Statement as to Insurability. In fact, as noted above, while the Statement as to Insurability calls itself a part of the "application," none of the documents presented to the applicant did. Indeed, under the terms of the documents presented to Mrs. Wessman, she may have expected coverage. Accordingly, this case needs to be remanded so that the finder of fact can determine what the Wessmans' expectations were, and whether those expectations were reasonable under the circumstances.

We note that *Atwater Creamery* itself presents the most usual context in which Minnesota courts have applied the reasonable expectations doctrine. *See also Grinnell Mutual Reinsurance Co. v. Wasmuth*, 432 N.W.2d 495 (Minn.Ct.App.1988) (relying on reasonable expectations doctrine to give effect to insured's expectations of coverage). In *Atwater Creamery*, the major exclusion that operated to defeat the expectations of the insured was placed in the definitions section of the policy; so hidden, the insured was not aware of the exclusion and that it was not covered for the loss. In contrast, those Minnesota cases which do not invoke the reasonable expectations doctrine to protect an in-

sured's expectations of coverage frequently involve exclusions that, although sometimes harsh, were set out clearly and unambiguously within the policy itself. *See Ross v. Minneapolis*, 408 N.W.2d 910 (Minn.Ct.App.1987); *Gunderson v. Classified Insurance Corp.*, 397 N.W.2d 922, 925 (Minn.Ct.App.1986); *Merseth v. State Farm Fire & Casualty Co.*, 390 N.W.2d 16, 18 (Minn.Ct.App.1986). The case at bar is, however, highly analogous to *Atwater Creamery*, for the meanings of significant terms relied upon by the insurance company to deny Mrs. Wessman coverage were hidden in supplementary documents not presented to Mrs. Wessman.

**B. Construction of Ambiguous Terms**

While we have found that this case should be remanded to the district court under the reasonable expectations doctrine, we also find that the insurance contract under consideration contains ambiguities that establish an independent, albeit related, ground for reversal.

Minnesota cases identify two types of ambiguity in insurance contracts: "Ambiguity may result from terms in a policy that are susceptible to more than one meaning. Ambiguity may also result from irreconcilable conflict between terms or provisions within the contract." *Morris v. Weiss*, 414 N.W.2d 485 (Minn.App.1987) (citations omitted).

Both types of ambiguity are present here, first within the conflicting provisions of the Conditional Receipt, which at one point sets out to limit liability under the receipt to $60,000, and at another point purports "not to create any temporary or interim insurance," and then goes on to state four conditions to be met before the insurance "applied for" becomes effective. When the language of an insurance policy is ambiguous, it must be construed in favor of finding coverage. *See Nordby v. Atlantic Mutual Insurance Co.*, 329 N.W.2d 820, 822 (Minn.1983); *Morris*, 414 N.W.2d at 487. With regard to this ambiguity, the district court correctly perceived that the full policy, as compared to the $60,000 limit, should be effective if the four conditions

set out in the Conditional Receipt had been met. We believe, however, that the district court failed to note that those provisions themselves contained ambiguous terms— that is, terms which are susceptible to more than one meaning.

In this case, as discussed above, the meanings of the words "application" and "acceptable risk" were unclear. To a layperson such as Mrs. Wessman, these terms may well have meant that coverage was predicated upon completing the form entitled "APPLICATION" and being relieved of the obligation to undergo a medical examination; to the insurance company, however, those terms may have included a requirement that the Statement as to Insurability had been completed.

Ambiguous terms should be submitted to a jury for consideration as to their construction and effect:

> The rule is well established that ordinarily the construction of a writing which is unambiguous is for the court, particularly when the intention of the parties is to be gained wholly from the writing. *However, if the language is ambiguous, resort may be had to extrinsic evidence, and construction then becomes a question of fact, unless such evidence is conclusive.* \* \* \* Ordinarily, the question whether the language of a contract is ambiguous is one of law for the court. \* \* \* The extrinsic facts which may be considered in aid of construction are ordinarily questions for the court. \* \* \* It is also true that where parties to a contract have given it a practical construction by their conduct, as by acts in performance thereof, such construction may be considered by the court in determining its meaning and in ascertaining the mutual intent of the parties. \* \* \* Where such extrinsic evidence is conclusive and undisputed and renders the meaning of the contract clear, its construction again becomes a question of law for the court.

*Transport Indemnity Co. v. Dahlen Transport, Inc.*, 281 Minn. 253, 161 N.W.2d 546, 551 (1968) (citations omitted) (emphasis added). *See also Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn. 1979) ("The construction and effect of a contract are questions of law for the court, but where there exists an ambiguity and construction depends upon extrinsic evidence and a writing, there is a question of fact for a jury"); *O'Connell v. Ward*, 130 Minn. 443, 153 N.W. 865, 866 (1915) (trial court properly found contract language ambiguous, and properly "received verbal testimony as to surrounding circumstances ... for the purpose of determining the intent and meaning of the ambiguous language of the contract.... The construction of this ambiguous language, in the light of the surrounding circumstances was accordingly proper to be submitted to the jury"); *Empire State Bank v. Devereaux*, 402 N.W.2d 584 (Minn.Ct.App.1987). Under this basic principle of construction the jury should have had an opportunity to consider the meaning of the contractual documents presented to Mrs. Wessman.

## III.

Based on the reasonable expectations doctrine and ambiguities in the contractual documents, we believe that summary judgment was not appropriate in this instance.

Reversed and remanded for action consistent with this opinion.

FAGG, Circuit Judge, dissenting.

I respectfully dissent. I would affirm on the basis of the district court's opinion.