# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1612

_____

| | | |
|---|---|---|
| Minnesota School Boards Association Insurance Trust, | * * * | |
| Appellant, | * * | Appeal from the United States District Court for the |
| v. | * * | District of Minnesota. |
| Employers Insurance of Wausau, a Mutual Company, a corporation, | * * * | |
| Appellee. | * | |

_____

Submitted:  March 14, 2003

Filed:  June 9, 2003

_____

Before WOLLMAN, RICHARD S. ARNOLD, and SMITH, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The Minnesota School Boards Association Insurance Trust (the Trust) appeals the district court's[1] denial of its motion for judgment as a matter of law following an adverse jury verdict on its breach of contract claim against Employers Insurance of

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

Wausau (Wausau). The Trust also contends that the district court improperly instructed the jury. We affirm.

I.

The Trust is a state-created self-insurance pool that issues property insurance policies to participating school districts in Minnesota. To reduce its exposure for catastrophic losses claimed under the policies it issues, the Trust purchases reinsurance contracts from companies, including Wausau. Under these reinsurance contracts, if a claimed loss exceeds a threshold amount, the reinsurer provides coverage to the Trust for the excess losses.

The Trust purchased a reinsurance policy (the 1993 policy) from Wausau that incepted on April 1, 1993, and contained a termination date of April 1, 1996. Pursuant to the 1993 policy, any losses in excess of $6,750,000 up to $50 million were the responsibility of Wausau. The 1993 policy required that the Trust and Wausau renegotiate premiums each year.

By letter dated December 27, 1993, the Trust replaced its insurance broker for the reinsurance contracts. On January 25, 1994, the Trust wrote to Ken Harrison, its former broker, to "officially request that you immediately issue notice of cancellation, effective April 1, 1994, to all reinsurance and insurance markets." On February 2, 1994, Harrison requested that Wausau cancel the Trust's policy effective April 1, 1994. The Trust's letter to Harris made no mention of an expectation that coverage under the policy would continue beyond the cancellation date. On April 25, 1994, the Burnsville High School was destroyed in an arson fire. The school district filed a claim for its losses under a policy issued by the Trust. The Trust settled the school district's claim for $14,141,781.73 and sought to recover $7,356,781.73 from Wausau under the 1993 policy. Wausau declined coverage, asserting that the Trust's

cancellation of the policy completely terminated Wausau's obligations to the Trust effective April 1, 1994.

## II.

On appeal, the Trust contends that the district court erred by denying its motion for summary judgment, by denying its Rule 50(a) and 50(b) motions for judgment as a matter of law, and by improperly instructing the jury. The district court's denial of summary judgment after a full trial on the merits is not reviewable on appeal; accordingly, we consider only the latter two charges of error. Metro. Life Ins. Co. v. Golden Triangle, 121 F.3d 351, 354 (8th Cir. 1997). We review de novo the denial of a motion for judgment as a matter of law. Cross v. Cleaver, 142 F.3d 1059, 1066 (8th Cir. 1998). We evaluate the record in the light most favorable to the nonmoving party and reverse only if there is no legally sufficient basis for a reasonable jury to find for the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).

The Trust places primary emphasis on its contention that once the court determines that an insurance policy is ambiguous, it must invariably construe the policy in favor of coverage, limited only by the insured's reasonable expectations. We agree with the district court that the policy is ambiguous. The policy claims to follow form to a policy identified only as "20-000000-00." The parties agree that no such policy exists. In addition, the 1993 policy was silent on whether it was a risk-attaching or a losses-occurring policy;[2] whereas the subsequent policy purchased by

---

[2]In its instructions to the jury, the district court described these two types of insurance as follows:

> Insurance provided on a "risk-attaching" basis is intended to cover the risks associated with an insurer's contractual obligations to its policyholders which are created, or "incept," during the time the risk-

the Trust from Wausau contained the following declaration: "Reinsurance term: April 1, 1994 to April 1, 1995; risks attaching basis." The addition of language in the subsequent policy expressly stating that it was written on a risk-attaching basis strongly supports a finding of ambiguity. Orren v. Phoenix Ins. Co., 179 N.W.2d 166, 169 (Minn. 1970); see also Northwest Airlines, Inc. v. Globe Indem. Co., 225 N.W.2d 831, 837 (Minn. 1975) ("[T]he very fact that their respective positions as to what this policy says are so contrary compels one to conclude that the agreement is indeed ambiguous.").

The rule that ambiguity must be resolved in favor of the insured derives from the presumption that the insurer is the drafter of the contract and offers it on a take-it-or-leave-it basis. Although this rule would seem to have less force in the present context, in which the insured is a business represented by lawyers and an insurance broker, the Minnesota Supreme Court has applied the rule in disputes between parties apparently having equal bargaining power. See 3M v. Travelers Indem. Co., 457 N.W.2d 175, 184 (Minn. 1990); 3M, 457 N.W.2d at 185 (Kelley, J., dissenting) (arguing that construction against the insurer is "inapt" in the context of large corporations with sophisticated legal departments). Minnesota courts have stated that "all doubts" are "to be resolved in favor of the insured." Watson v. United Servs. Auto. Ass'n, 566 N.W.2d 683, 692 (Minn. 1997); see also Northwest Airlines, 225 N.W.2d at 837 ("The rule is well settled that ambiguous language will be strictly

---

attaching insurance is in effect. . . . Risk-attaching insurance protects the insured for the entire length of time the insured assumed the risk involved in the underlying contractual agreement, including any time after the point where no new risks would attach to the risk-attaching insurance.

Insurance provided on a "loss-occurring" basis covers an insured's losses which arise during the time the policy is in effect. Loss-occurring insurance does not cover losses which arise after the expiration or cancellation of the policy.

construed in favor of the insured."). However, "the reasonable-expectations doctrine does not automatically mandate either pro-insurer or pro-insured results" <u>Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.</u>, 366 N.W.2d 271, 278 (Minn. 1985). The important issue on appeal is what role the jury plays once the court determines that the policy is ambiguous.

"[I]f the language is ambiguous, resort may be had to extrinsic evidence, and construction then becomes a question of fact, unless such evidence is conclusive." <u>Transport Indem. Co. v. Dahlen Transport, Inc.</u>, 161 N.W.2d 546, 550 (Minn. 1968) (citations omitted); <u>Wessman v. Mass. Mut. Life Ins. Co.</u>, 929 F.2d 402, 406 (8th Cir. 1991) (remanding "so that the finder of fact can determine what the Wessmans' expectations were, and whether those expectations were reasonable under the circumstances"). Although the Trust argues that doubts should be resolved in its favor as a matter of judicial function, determination of the reasonableness of its expectations was properly for the jury. <u>See</u> <u>Fenske v. Waseca Mutual Ins. Co.</u>, No. C9-93-2054, 1994 WL 149483, at *4 (Minn. Ct. App. Apr. 19, 1994) (reversing summary judgment for insurer and remanding for trial to determine in light of extrinsic evidence what a reasonable person would understand the terms to mean). As the district court recognized, the Trust clearly intended to have seamless reinsurance coverage. Nevertheless, the question properly presented to the jury was whether it was reasonable to expect such coverage under the 1993 policy after that policy had been unconditionally cancelled. The record contains ample evidence upon which the jury could have found for Wausau on the basis of the Trust's unconditional cancellation or a determination that an expectation of run-off coverage for risks that had attached during the term of the 1993 policy was not reasonable under the circumstances.

The Trust contends that the district court erred by charging the jury with determining whether the policy was ambiguous and, if so, to ascertain the mutual intent of the parties. The district court enjoys broad discretion in formulating jury

instructions. <u>Cross</u>, 142 F.3d at 1067. The jury was instructed "to determine whether [the 1993 policy] provided coverage after the April 1, 1994, cancellation." The jury returned a special verdict form indicating a finding of no coverage. The form did not require the jury to specify whether its finding was based on a determination that the Trust could not reasonably have expected risk-attaching coverage under the circumstances or based on a determination that the parties intended the cancellation to be effective without regard to the type of coverage. Although the jury instructions describe what it means for an insurance policy to be ambiguous, the instructions do not charge the jury with deciding whether the 1993 policy was ambiguous. Viewed as a whole, the district court's instructions "fairly and adequately submit[ted] the issues to the jury." <u>Id.</u> (citation omitted). Accordingly, we find no error in those instructions.

In light of our holding, we deny as moot Wausau's motion to strike portions of the Trust's reply brief and supplemental appendix.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-