288 So.2d 359 (1974)
INSURANCE COMPANY OF NORTH AMERICA
v.
BINNINGS CONSTRUCTION COMPANY, INC. and Binnings Equipment Company, Inc.
No. 5985.
Court of Appeal of Louisiana, Fourth Circuit.
January 8, 1974.
*360 William S. Penick, New Orleans (Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher), New Orleans, for plaintiff-appellant.
John F. Caraway (Bryan & Caraway), New Orleans, for defendants-appellees.
Before REDMANN and STOULIG, JJ., and FLEMING, J. Pro Tem.
REDMANN, Judge.
This appeal by plaintiff insurer and answer to appeal by defendant insureds argue questions of the proper determination of retrospectively calculated insurance premiums.
The parties agree that the basic issues are (1) whether settlement payments over $1,000 were properly excluded by the trial court from the calculation (a) because of the insurer's breach of an alleged oral agreement to "consult" with insureds on settlements of that size or (b) because, as insureds argue, insurer had and failed to carry the burden to prove the reasonableness and good faith of its settlements; and (2) if those settlements were not properly excluded, and additional premiums are therefore owed, whether a set-off is due because of allegedly improper exclusion by the insurer of attorney's fees from the $10,000 per loss maximum includible in the calculation (in an earlier period).

SETTLEMENTS
The retrospective premium adjustment provisions related premiums to liability experience, but provided a minimum premium, payable even if no liability arose, and a maximum premium, payable even if many large liabilities arose. Moreover, the adjustment was affected only by those portions of liability from any one occurrence not exceeding $10,000. Thus one $500,000 liability (disregarding costs) would not affect premium any more than one $10,000 liability. The minimum and maximum premiums were related to a standard premium (that for a similar policy without the "Plan D" retrospective rating). In one policy, e. g., minimum was 60% and maximum 115% of the standard premium. The key point is that, within those various limits, retrospective premium included at least 1.13 times the incurred losses.
We here note that even "standard" premium rating is related to loss experience. Without the retrospective premium plan, insureds are at least prospectively affected by liabilities insured against, even though the insurer pays out its own money in settling those liabilities. With the retrospective plan, standard premium is similarly affected prospectively, but additionally insureds mustwithin the retrospective premium adjustability limitspay the insurer as increased premium for the settlements *361 the insurer has made; and it may be said that, within those premium limits, the insurer settles claims not with its own money but with insureds' money.

Agreement to Consult
Thus the parties had a two-fold reason for an agreement that insureds be consulted (or even have veto power) on settlements. But there is no admissible evidence of such an agreement to "consult" (much less to pay no premium on settlements entered without consultation). Defendants' president's testimony that defendants' independent insurance agent obtained from some unidentified representative of the insurer an oral agreement to consult was hearsay, and plaintiff's objection to its admission into evidence should have been sustained. Accordingly there was no proof of an agreement to consult.

Reasonableness of Settlements
But insureds' president also criticized as excessive in amount the settlement of certain claims. In one case of an injured knee where a workman's medical expense was only $82.50, compensation of $3,660 was paid and then the claim was settled for an additional $5,000. But it was not proved that any of these settlements was unreasonable, nor that the insurer had performed its contract other than with the good faith required by C.C. art. 1901. Thus the question is basically who bears the burden of proof on this issue.
We view the retrospective rating plan as allowing the insureds to be, within modest minimum and maximum limits, self-insurers for whom the insurer handles settlement as well as administration, receiving a commission (about 13 to 16%) on the liabilities incurred (whether settled or only estimated). (This plan is, of course, part of a larger insurance coverage, without retrospective charge, for the sub-minimal and supra-maximal, or excess, coverage.)
The retrospective plan, insofar as it incorporates a commission to the insurer on settlements in the "self-insured" range, does put it in the insurer's power to profit by settling claims (within that range), and by settling at a higher rather than a lower amount. When the liabilities (settled and reasonably estimated) have reached the point that the retrospectively adjusted premium would equal the minimum premium, settlement of another claim will bring additional premium to the insurer in an amount of about 116% of the settlement (to the extent it does not exceed $10,000). Moreover, settlement for, say, $10,000 of a claim that could have been settled for $5,000 would bring an additional premium of $11,600 while a $5,000 settlement would bring only $5,800. Thus the higher settlement would generate $1,600 rather than $800 to the insurer.
The plan also enables the insurer to avoid or limit its own excess liability by settling, at the insured's cost (within the insured's $10,000 limit), at a higher figure than it might if it were not exposed only for the excess.
"[T]he conflict of interest which is inherent in this arrangement" led a Minnesota court to conclude that the insurer suing for the retrospectively adjusted additional premium bears the burden of proving the reasonableness and good faith of the premium-raising settlements. Transport Indem. Co. v. Dahlen Transport, Inc., 1968, 281 Minn. 253, 161 N.W.2d 546.
We agree with that court's pertinent observation that the insurer is the party in possession of the evidence upon which the propriety of the settlements must be judged. We further agree that the insurer must ultimately bear the burden of proving reasonableness of its settlements, especially where it is a plaintiff who must prove every element of its cause of action for (in effect) reimbursement of those settlements it made of defendants' liabilities.
*362 But we believe that, once an insurer under a retrospective premium plan has shown (or there is no dispute) that it in fact has paid settlements, it is entitled to a presumption of law that it has exercised reasonableness and good faith in making the settlements. Thus, even when a plaintiff, an insurer who proves the settlements were made would thereby rebuttably establish entitlement to the corresponding premium. The insurer need not give evidence, as to each claim settled, of circumstances of the accident or of what the medical reports indicated so as to indicate probability of liability and quantum; nor should a court be obliged to decide the reasonableness of each settlement. Here, for example, there were apparently 130 claims settled, and it would abuse both the parties and the judicial system to require proof in each of 130 settlements in a $12,000 lawsuit, unless there is reason to question the reasonableness of each.
Thus, while the plaintiff insurer will always bear the burden of proof, the presumption of reasonableness will shift to defendant insured the burden of going forward with the evidence to rebut the presumption. Insured need not prove unreasonableness, but must cast sufficient doubt to deprive plaintiff insurer of the benefit of the presumption, whereupon plaintiff's burden of proof will not have been met unless it goes forward with evidence of the reasonableness of the settlement.
Here insureds concede they have no complaint about any settlement of $1,000 or less. But from the first report showing a large estimated loss reserve for the injured knee case ($82.50 medical and $8,660 settlement), insureds' president complained to the insurer about the excessive reserve "and asked them to resist payment of the claim because I didn't think it was valid. The fact was the man banged up his knee a little bit and wasn't hurt, in my opinion, and there should have been no substantial settlement." Insureds' president also complained in some detail of another case ultimately settled for about $11,000. His testimony as to other settlements he deemed unreasonable was prevented by the (apparent) sustaining of an objection.
We accept insureds' president's testimony (in the absence of other evidence) as sufficient to raise a question of the reasonableness of the two settlements he detailed. We do not suggest the proportion of settlement figure to medical cost is especially significant, but the testimony of the minor nature of the injuries persuades us the insureds were entitled to have the insurer present evidence of the reasonableness of the settlements.
Yet another problem exists in that, even if a claim were settled at an unreasonably high figure, the insurer would still be entitled to a premium based on what would have been a reasonable figure. The insured has had the benefit of having its liability discharged and should pay the correct contract price for that benefit.
Therefore we will remand so that the insureds can present evidence as to the other settlements (over the $1,000 amount they conceded) that they believe unreasonable, and so that the insurer can present evidence to establish the reasonableness of any sufficiently questioned settlements. The trial judge will determine whether each questioned settlement was reasonable and if not allow only a reasonable amount to enter the premium calculation.

ATTORNEY'S FEE
Because there may result an indebtedness for premium, we consider insureds' alternative claim for set-off.
The insureds claim that a $16,922 attorney's fee incurred in handling a $178,767 loss should not have been included in an earlier premium calculation. The resulting premium rebate would more than set off the amount the insurer now claims. Insureds argue that the $10,000 each occurrence *363 limit applies to the total of both loss and fee.
The policy states that as to insurance against general liability in excess of "$10,000 each occurrence" the premium "shall not be subject to Plan D" (meaning retrospective recalculation). Then follows immediately the language insureds rely on: "The incurred losses to be included in computing the premium for the insurance subject to Plan D shall not include that portion of the losses actually paid and the reserves for unpaid losses which is excess of such limits of liability." (Our italics.)
Insureds' argument is that "losses actually paid and the reserves for unpaid losses" means "incurred losses, actually paid and the reserves for unpaid incurred losses" and therefore, since "incurred losses" by definition includes attorney's fees (as "allocated adjustment expense"), the fees are included within the $10,000 limit.
However, "incurred losses" is defined as the sum of "(1) all losses, including medical, actually paid, (2) reserves for unpaid losses as estimated by the company, (3) premiums on bonds * * * (4) interest accruing after entry of a judgment * * * and (5) allocated loss adjustment expenses * * *." Evidently the language insureds rely on uses the identical wording we have italicized (save "including medical") to stipulate that the first two of the five elements of "incurred losses" are not 100% includible: that these two elements in excess of the $10,000 each occurrence limit are not includible. If all five elements were intended to be subject to the $10,000 limit, it would have been much simpler to mention none and make, simply, "incurred losses" so limited. Or if repeating were for some other reason desired but all five were intended to be limited, all five would presumably have been mentioned.
Insureds note insurer's amendment in later policies of the sentence in question to expressly state that the other three elements are not subject to the $10,000 limit. Insureds argue that at least, as the amendment suggests, the language was ambiguous and should therefore be construed against the insurer under established principles, citing C.C. art. 1957 and Kendrick v. Mason, 1958, 234 La. 271, 99 So.2d 108.
We deem the language unambiguous in its context. If it may be said to lack absolute clarity considered by itself, the clarity appears from the chain of clauses related to premium calculation. One portion of retrospective premium is "converted losses", meaning "incurred losses multiplied by the [specified] loss conversion factor." Incurred losses, as we have noted, is the sum of five elements. The questioned language does not enter premium calculation until this point, when it appears as a limitation using the identical wording of only two of the five elements of incurred loss. At this point in the policy context, we conclude, the language is not ambiguous or subject to insureds' interpretation.
The trial court was correct in its conclusion that insureds are not entitled to the set-off claimed.
The judgment is set aside insofar as it rejected plaintiff's demand and the matter is remanded for further proceedings. Costs will await final outcome.