624 A.2d 520

**PORT EAST TRANSFER, INC. et al.**

**v.**

**LIBERTY MUTUAL INSURANCE CO.**

**Misc. No. 10, Sept. Term, 1992.**

Court of Appeals of Maryland.

May 12, 1993.

Charles M. Kerr (Vicki L. Dexter, Adina N. Amith, Irwin, Kerr, Green, McDonald and Dexter, all on brief), Baltimore, for appellant.

Phillip R. Zuber (Sasscer, Clagett & Bucher, both on brief), Upper Marlboro, for appellee.

Argued before MURPHY, C.J. and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and ROBERT M. BELL, JJ.

McAULIFFE, Judge.

The United States District Court for the District of Maryland has certified to this Court a question involving the required elements of a contract claim brought by an insurer against its insured for unpaid retrospective premiums and involving the allocation of burdens of proof and production of evidence in such an action.

## I.

Between 1 March 1986 and 25 April 1989, Port East Transfer (Port East)[1] entered into a number of contracts of insurance with Liberty Mutual Insurance Company (Liberty Mutual), some of which provided for retrospective premium adjustments. Under a retrospective policy, the parties establish an estimated premium at the inception of the period of coverage, but agree that this premium will be adjusted at stated intervals based upon specified factors. These factors commonly include the amount paid for losses under the policy, administrative expenses, and profit.

Although the precise terms of the retrospective contracts between these parties are somewhat complex, and differ from policy to policy, we shall endeavor to state in general terms the essence of the retrospective premium arrangement. Liberty Mutual was obliged to investigate, adjust, settle, or provide for the defense of all covered claims. Liberty Mutual initially paid, from its own funds, all claim-related expenses as well as the amount of settlement or judgment. When periodic accountings were made, Liberty Mutual was entitled to reimbursement for these expenses and advances of capital, plus an agreed upon percentage factor calculated to reimburse the insurer for the use of its funds and to provide for a profit. If the total figure for the accounting period were less than the estimated premium paid, the insured was entitled to a refund. If the estimated premium proved insufficient, the insured was obligated to pay the difference to the insurer.

During the period covered by the policies in question, Liberty Mutual responded to hundreds of claims, and kept Port East regularly apprised of the status of those claims. At the end of the period, Liberty Mutual calculated and

---

1. In addition to Port East, the insurer sued Hale Development Corporation and Edwin F. Hale, individually and trading as E.F. Hale Properties. We shall refer to the defendants collectively as Port East.

applied the retrospective adjustment for these policies and concluded that Port East owed additional premiums.[2]

Port East declined to pay, and Liberty Mutual filed a two-count complaint in the United States District Court for the District of Maryland, alleging breach of contract and money due on an account stated between the parties. Liberty Mutual alleged the existence of contracts between the parties, and attached to its complaint a copy of the account allegedly stated between them. It also alleged that Port East refused to pay the premiums in breach of the contracts. Liberty Mutual did not allege that it handled the claims under the retrospective premium insurance policies reasonably and in good faith.

Port East answered, generally denying liability, and in the following language specifically denied performance of a condition precedent:

> Pursuant to Federal Rule of Civil Procedure 9(c), Defendants state Plaintiff Liberty Mutual must prove that it carried out the duties that it owed to its insureds in good faith and with reasonable competence as a condition precedent to any right of recovery it may have against its insureds under the policies at issue. The policies carried with them an inherent conflict of interest, since the policy premiums are retrospective in nature. Defendants deny that Liberty Mutual acted in good faith and with reasonable competence in performing its duties to its insureds under these policies, and, therefore, they assert that Liberty Mutual has not fulfilled the conditions precedent to any right of recovery it may have from its insureds under these policies.

Port East also filed a motion for judgment on the pleadings, contending that "Liberty Mutual has not alleged that the settlements it made, and upon which the premiums were based, were made in good faith and were reasonable." Port

---

2. Liberty Mutual claims a total of $1,267,333.70. Part of this sum, $272,149.70, is said to represent audited premiums due on policies not subject to retrospective premium adjustments.

East contended that the contracts of insurance were made in Massachusetts, and that Massachusetts substantive law should apply. It argued that under Massachusetts law, the burden of proof is on the insurer to show compliance with an implied condition of good faith and reasonableness. Port East further reasoned that because the insurer had the burden of proving good faith and reasonableness, those implied conditions were in fact elements of the cause of action for breach of contract, and must be affirmatively alleged in the complaint.

Liberty Mutual responded to the motion, denying that Massachusetts law applied, and denying that it was obliged to affirmatively plead reasonable and good faith handling of each claim. In support of its reply, Liberty Mutual filed an affidavit of the senior account representative responsible for this account, in which she stated that claims made against Port East were "investigated, defended, and, where appropriate, reasonably settled" by Liberty Mutual, and that she had "no knowledge of any claim that was not handled reasonably and in good faith."

Judge Herbert F. Murray treated the defendants' motion as a motion for summary judgment. After hearing argument on the motion, he determined that Maryland law governs the contracts in question. In his opinion deferring ruling on the defendants' motion, Judge Murray reviewed the contentions of the parties and the law from other jurisdictions, and concluded that certification of a question to this Court was appropriate. He said:

Because no Maryland court ever has addressed the issue of the relative burdens of pleading and proof in cases involving cases of retrospective premiums directly, because the case law from other jurisdictions provides no clear, overriding, or well-accepted guiding principle, and because the issue lies at the center of the controversy presented by this law suit, this Court will avail itself of Maryland's certification statute and certify the issue to

the Maryland Court of Appeals.[3]

He then certified the following question to this Court:

Whether, in an insurer's action for unpaid retrospective premiums, the reasonableness and good faith of the insurer in connection with claims subject to such retrospective premium adjustments is an essential element of the claim?[4]

## II.

We are not asked to, nor will we, address the adequacy of Liberty Mutual's complaint.

Although state law may ultimately be applicable in the trial of the substantive issues in a diversity case, and governs the allocation of the burden of persuasion in such a case, the law is clear that the federal courts apply the Federal Rules of Civil Procedure in questions regarding pleadings and not state rules.

27 *Federal Procedure* § 62:17, at 204–5 (L.Ed.1984). *See also Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Thompson v. Allstate Insurance Company*, 476 F.2d 746, 749 (5th Cir.1973). Rather, reading the question certified to us in light of the concerns expressed by Judge Murray in his written opinion, we confine our discussion to the nature of the action and allocation of burdens of proof and production that would apply if the case were being tried in a court of this State.

■ Liberty Mutual does not dispute Port East's contention that there is a condition implied by law in its retrospec-

---

**3.** The Maryland Uniform Certification of Questions of Law Act is codified at §§ 12–601 thru 12–609 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1989 Repl.Vol.)

**4.** To ensure that this Court would have flexibility to respond to relevant issues, Judge Murray added:

The particular phrasing of the certified question is not intended to restrict the Court of Appeals of Maryland in its consideration of the problem or the issue involved in this litigation. Based upon its own analysis, that Court may restate the issue in any manner consistent with the question being certified.

tive contracts with Port East that it act in good faith when investigating, adjusting, or settling claims. It argues, however, that it should not be required to allege and prove that it acted reasonably and in good faith with respect to each of the hundreds of claims it handled for its insured. Rather, Liberty Mutual says it should be permitted to allege and show the existence of the contract and a breach by Port East, and it should then be incumbent upon Port East to come forward with evidence of any claimed breach of the implied condition.

Liberty Mutual argues that: 1) the breach of this implied condition must be specifically pleaded by the defendant as an affirmative defense, and that the burden of production and of persuasion are upon the defendant; or, alternatively, 2) the alleged breach of an implied condition is a matter about which the defendant should have the burden of coming forward with sufficient evidence to legitimately generate the issue. Port East contends that in order to recover in a contract action such as this, the plaintiff must allege and prove the performance of each covenant and condition by which it is bound, whether express or implied.

In *Transport Indemnity Co. v. Dahlen Transport, Inc.*, 281 Minn. 253, 161 N.W.2d 546 (1968), the insurer sued for additional premiums claimed to be due under a retrospective premium policy. The insured denied liability, contending that at least part of the amount claimed represented money unreasonably paid by the insurer in settlement of claims. The insurer took the position that it had the right to make the sole and exclusive determination as to the appropriateness or propriety of amounts paid for losses or expenses, and that the reasonableness of the payment and the good faith of the insurer could not be challenged. The Supreme Court of Minnesota disagreed. The court pointed out that under the retrospective terms of the policy the insurer was, in effect, setting claims with the insured's money, thus placing the insurer in a position analogous to that of an agent advancing money for his principal in conformity with written authority. *Id.* 161 N.W.2d at 548. That being the

case, the court said, the agent could ordinarily recover the advancement unless the principal affirmatively established that the payments were made in violation of a duty of loyalty and good faith. In other words, the court said, if matters were that simple, the insured would have the affirmative duty of proving bad faith on the part of the insurer.

The court went on, however, to note that the issue was made more complex by the existence of other non-retrospective insurance contracts between the parties. The retrospective premium liability policy afforded coverage only up to $5,000 per occurrence. Other fixed premium policies provided coverage for claims between $5,000 and $1,000,000 for each occurrence. Accordingly, by settling a claim for $5,000 or less the insurer could charge the amount of the settlement to the insured as a retrospective premium, and at the same time avoid the potential of being required to make a non-recoverable payment under one of the fixed premium policies if a verdict for more that $5,000 were entered. This added factor, the court said, created an inherent conflict of interest that entitled the insured "to have the insurer produce the information pertinent to the reasonableness and good faith of the settlement and assume the burden of proof on the issue." *Id.* at 549.

In *Transit Cas. Co. v. Topeka Transp. Co., Inc.,* 8 Kan.App.2d 597, 663 P.2d 308 (1983), the insurer brought an action to recover $7,550 in retrospective premiums. The Court of Appeals of Kansas, citing *Transport Indemnity Co., supra,* held that the insurer had the burden of showing, as part of its case in chief, evidence of probable liability in each case it settled, as well as evidence that the amounts paid were reasonable. *Id.* 663 P.2d at 311. The premiums at issue involved claims of eight to ten claimants arising out of two incidents. The court said that the insurer should be in possession of documentation in the form of accident reports, medical reports, investigative reports, lawyers' recommendations and the like, and that requiring the insurer

to place such documents in evidence would not constitute an unreasonable burden.

In *Corrado Bros. v. Twin City Fire Ins. Co.*, 562 A.2d 1188, 1192 (Del.1989), the Supreme Court of Delaware held that where an insured raised a defense of unreasonableness as to a particular settlement, an insurer seeking retrospective premiums based upon that settlement had the burden of proving that the settlement was made in good faith and on reasonable terms.

In *Insurance Co. of No. Amer. v. Binnings Const. Co., Inc.*, 288 So.2d 359 (La.App.1974), the court held that although the insurer seeking retrospective premiums must ultimately bear the burden of proving reasonableness of its settlements, once it has proved payment of settlements it is entitled to a presumption of law that it exercised reasonableness and good faith in making the settlements. *Id.* at 361–362.

> Thus, while the plaintiff insurer will always bear the burden of proof, the presumption of reasonableness will shift to defendant insured the burden of going forward with the evidence to rebut the presumption. Insured need not prove unreasonableness, but must cast sufficient doubt to deprive plaintiff insurer of the benefit of the presumption, whereupon plaintiff's burden of proof will not have been met unless it goes forward with evidence of the reasonableness of the settlement.

*Id.* at 362. The Louisiana appellate court reasoned that requiring the insured to come forward with some evidence of the bad faith of the insurer or unreasonableness of particular settlements would avoid the necessity of requiring extensive proof of reasonableness of every claim, including claims not questioned.

> The insurer need not give evidence, as to each claim settled, of circumstances of the accident or of what the medical reports indicated so as to indicate probability of liability and quantum; nor should a court be obliged to decide the reasonableness of each settlement. Here, for example, there were apparently 130 claims settled, and it

would abuse both the parties and the judicial system to require proof in each of 130 settlements in a $12,000 lawsuit, unless there is reason to question the reasonableness of each.

*Id.* *See also Deerfield Plastics v. Hartford Ins.*, 404 Mass. 484, 536 N.E.2d 322, 324 (1989) (insurance company has the burden of proving that it acted reasonably, at least when the insured raised the question of the insurer's negligence); *National Sur. Corp. v. Fast Motor Serv.*, 213 Ill.App.3d 500, 157 Ill.Dec. 619, 624, 572 N.E.2d 1083, 1088 (1991) (once insured placed in issue the reasonableness of the claims settlements made by insurer, insurer was required to prove its entitlement to the premiums charged).

## III.

In the case certified to us, Liberty Mutual was confronted with potentially conflicting interests when it handled claims against Port East that were covered by a retrospective premium policy. There may have been, as Port East suggests, a temptation to act somewhat more cavalierly when spending someone else's money than when spending its own. Moreover, there may have been a temptation toward generosity when the insurer's fee increased with each dollar paid out.

■ On the other hand, these circumstances were apparent to these two sophisticated business entities when they entered into the contract. In selecting an insurer for a retrospective premium policy, the insured necessarily must consider not only the technical expertise of the insurer, but its integrity as well. This does not mean, as some insurers have contended, that the insurer is thereby granted absolute authority to proceed in any manner it may wish. Even when the parties are silent on the issue, the law will impose an implied promise of good faith. This is true in a variety of situations in which parties seemingly grant unlimited authority to others to make decisions of vital interest to them, especially where the decision-maker has a potential conflict of interest. *See, e.g., Clarke Baridon, Inc. v.*

*Merritt–Chapman & Scott Corp.*, 311 F.2d 389, 397 (4th Cir.1962) (fact that engineer or architect given authority to resolve disputes was selected and employed by one of the interested parties is not reason for disregarding his decision, so long as he acts in good faith and without obvious mistake); *M. & C.C. v. Allied Contractors*, 236 Md. 534, 545, 204 A.2d 546 (1964) (where parties have agreed to binding determination of disputed matters by a designated person, decision is equivalent to award of arbitration and is final and conclusive in absence of fraud or mistake so gross as to imply bad faith or the failure to exercise honest judgment, even though the decision-maker is an official or representative of the parties); *Nelley v. Baltimore City*, 224 Md. 1, 9, 166 A.2d 234 (1960) (same).

That the law provides a measure of protection to a party by the imposition of an implied condition of good faith does not mean that the party so protected is relieved of the burden of offering some evidence of a breach of that condition. We agree with the Louisiana appellate court that to require the insurer, in the absence of any evidence of bad faith, to offer proof of its good faith in investigating, adjusting, and settling hundreds of claims in order to prove its action for premiums, "would abuse both the parties and the judicial system." *Insurance Co. of No. Amer. v. Binnings Const. Co., Inc., supra*, 288 So.2d at 362. We hold, therefore, that in a case such as this, although the ultimate burden of proof of its claim remains at all times with the insurer, the burden of production of evidence of violation by the insurer of an implied condition of good faith is upon the insured. We believe this allocation of the burden of production will provide adequate protection for the party claiming bad faith, but will not unnecessarily burden the insurer or the court with protracted proceedings and unnecessary production of evidence concerning matters not legitimately at issue.

In allocating to the insured this burden of coming forward with the evidence, we have taken into consideration that the insurer will ordinarily have superior knowledge of

the facts bearing on the issue. Of necessity, then, wide latitude must be given the insured in pretrial discovery. It seems unlikely that an insured will undertake the considerable expense of an extended inquiry into every case file without some reasonable suspicion that the insurer failed in its implied obligation. If the insured wishes such an inspection, however, modern discovery techniques are entirely sufficient to permit it, and the parties may thereby determine the existence of legitimate issues that should properly be brought before the court.

Creating a legal presumption of good faith is one method of allocating a burden of production to the insured, *see Insurance Co. of No. Amer. v. Binnings Const. Co., Inc., supra,* but it is not the exclusive method. Because the creation of a presumption carries with it potential complications with respect to the longevity of the presumption and instructions to the jury concerning the presumption, we elect to fix this burden of production without accompanying it with a presumption. The allocation is simply a device for predetermining who shall have the burden of producing sufficient evidence to legitimately create an issue. When the burden of production is satisfied, and the issue is therefore properly before the trier of fact, the plaintiff-insurer will shoulder the burden of persuasion on the issue.

This allocation to the insured of the burden of production is roughly analogous to that which exists in a criminal prosecution for murder when the defendant claims mitigation. The State always shoulders the burden of proof, including the burden of proving that the defendant's act was intentional, and without justification, excuse or mitigation. Yet, we have consistently allocated to the defendant the initial burden of production of evidence on the issue of mitigation.

Although the ultimate of burden of proving the absence of mitigation rests upon the State when that issue is properly in the case, the burden of initially producing 'some evidence' on that issue (or of relying upon evidence produced by the State or adduced from witnesses called

by the State) sufficient to give rise to a jury issue with respect to mitigation, is properly cast upon the defendant. *Sims v. State,* 319 Md. 540, 553, 573 A.2d 1317 (1990).

We therefore answer the certified question of law in the following manner: In an insurer's action for unpaid retrospective premiums, the reasonableness and good faith of the insurer in connection with claims subject to such retrospective premium adjustment need not be specifically alleged in the complaint nor proven as a part of the insurer's case in chief. The burden of production of evidence is upon the defendant-insured; the burden of persuasion when that issue is properly generated is upon the plaintiff-insurer.

CERTIFIED QUESTION ANSWERED AS SET FORTH ABOVE. COSTS IN THIS COURT TO BE EQUALLY DIVIDED BETWEEN THE PARTIES.