687 A.2d 760

LIBERTY MUTUAL INSURANCE COMPANY, PLAINTIFF–
RESPONDENT, v. PRESIDENT CONTAINER, INC.,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 20, 1996—Decided January 13, 1997.

Before Judges KING, KEEFE and LOFTUS.

*Jay D. Fischer* argued the cause for appellant (*Fischer, Weisinger, Caliguire & Porter*, attorneys; *Arthur L. Porter, Jr.*, on the brief).

*Jonathan M. Kuller* argued the cause for respondent (*Alan Wasserman*, attorney).

The opinion of the court was delivered by

KEEFE, J.A.D.

On an issue of first impression in New Jersey, Law Division Judge Peter E. Doyne held: "once the insurer [under a retrospective premium policy] has shown or there is no dispute that it in

fact has paid settlements, the burden shifts to the insured to make some showing of the carrier's negligence in its claim handling." Because Judge Doyne found that "defendant has failed in discovery and at trial to identify any instance of unreasonableness with which to cast sufficient doubt upon Liberty's claim handling," he awarded plaintiff Liberty Mutual Ins. Co. (Liberty) judgment in the amount of the retrospective premiums sought from defendant President Container, Inc. (President). On appeal, President primarily contends that the judge erred in placing any burden upon it to come forward with evidence, and also erred when he found that Liberty had not breached a 1983 agreement between the parties.

Liberty filed a complaint alleging that it had provided President with workers' compensation insurance coverage from November 1, 1985, to November 1, 1988, and asserted that President owed $131,072 in retrospective premiums. Unlike a standard insurance policy, a retrospective premium policy provides for the insurer's retrospective determination of the insured's premium obligations based, in part, on the insured's past claims and loss experience. In other words, the insured's premiums are basically calculated after the fact, rather than before. *See generally Alexander & Alexander Inc. v. Rose*, 671 *F*.2d 771, 773 (3d Cir.1982).

As the trial judge noted, the factual circumstances surrounding this action were largely undisputed. President did not dispute Liberty's calculations of the retrospective premiums allegedly due for the three policy years in question. However, President asserted that "Liberty Mutual failed to perform a condition precedent to the contract as set forth by the October 1983 agreement," thereby relieving President from performing under the contract. President relied on the following language in the 1983 agreement:

(e) Loss runs shall be mailed to Marvin Grossbard, President, President Container, on a monthly basis. Any billing or notice shall be forwarded to that same party.

(f) The insured shall have the opportunity of loss reserve review, it being the intention that Liberty Mutual shall maintain loss reserves at proper levels and subject to fair and reasonable standards.

(g) Liberty Mutual shall review the loss reserves with the Workmen's Compensation Bureau as to the current makeup of experience modification. The insured shall supply such information as indicates a flagrant disregard of loss reserves. In the event that the experience modification is adjusted, the premium shall be adjusted accordingly.

The 1983 agreement ends with this sentence: "The agreement of the insured to place its insurance lines in the hands of Liberty Mutual is based upon the representations made herein and in consideration thereof."

While defendant asserted that the 1983 agreement was "breached because it was not kept informed of loss reserves and claims on an on-going basis" so it could "review the same for compliance with fair and reasonable standards," Judge Doyne concluded that "there is no competent evidence before this court that the reserves were set unreasonably or unfairly high," and found that "defendant has failed in discovery and at trial to identify any instance of unreasonableness with which to cast sufficient doubt upon Liberty's claim handling." While the judge found no evidence of a "material breach" of the 1983 agreement by Liberty, most significant with regard to his ruling was his rejection of President's assertion that anything in the 1983 agreement constituted a "condition precedent" to defendant's obligation to pay retrospective premiums to plaintiff:

[N]othing in the 1983 agreement, the binder for the Worker's Compensation policy, nor the evidence at trial suggests that Liberty Mutual agreed that compliance with all terms of the 1983 agreement [was] a condition precedent to defendant's payment of premiums after Liberty Mutual had managed and settled its claims.

## I

President contends that the judge's "placement of the burden on the insured to make a showing of the carrier's negligence in its claims handling was a mistake of law, manifestly unjust, and reversible error." President urges that we adopt the rule announced by the Minnesota Supreme Court in *Transport Indemnity Co. v. Dahlen Transport, Inc.*, 281 *Minn.* 253, 161 *N.W.*2d 546 (1968), where an insurer sued its insured for addition-

al premiums allegedly due under a retrospective premium policy. The Minnesota Supreme Court held as follows:

> [W]e believe, in the absence of any directly controlling precedent of which we are aware, that the right of the insurer to collect from the insured in the form of a retrospective premium amounts paid out by it as losses should be contingent upon proof by the insurer that the settlements so made were in good faith and reasonable. The insurer, having been charged with the responsibility for investigating and adjusting the loss, is in possession of the relevant information upon which a determination of reasonableness and good faith must be based. The insured, having delegated the right and duty of investigation and settlement to the insurer, and having agreed to pay the expense in carrying out their assignment, has, by the terms of the insurance contract, put the information critical to the issue of reasonableness and good faith in the exclusive possession of the insurer. If the insured is to pay out as a retrospective premium the amounts paid by the insurer in settlement of liability claims under circumstances where, theoretically at least, the settlement of the claim has been beneficial to both ..., the insured should be entitled, it seems to us, to have the insurer produce the information pertinent to the reasonableness and good faith of the settlement and assume the burden of proof on the issue.

> [161 *N.W.*2d at 549.]

The Louisiana Court of Appeals rejected the *Transport Indemnity* rule in *Insurance Co. of North America v. Binnings Construction Co., Inc.,* 288 *So.*2d 359 (La.Ct.App.1974) (hereafter *"Binnings "*). While the *Binnings* court agreed with the observations in *Transport Indemnity* "that the insurer is the party in possession of the evidence upon which the propriety of the settlements must be judged," and "that the insurer must ultimately bear the burden of proving reasonableness of its settlements," *Id.* at 361, it held:

> [W]e believe that, once an insurer under a retrospective premium plan has shown (or there is no dispute) that it in fact has paid settlements, it is entitled to a presumption of law that it has exercised reasonableness and good faith in making the settlements. Thus, even when a plaintiff, an insurer who proves the settlements were made would thereby rebuttably establish entitlement to the corresponding premium. The insurer need not give evidence, as to each claim settled, of circumstances of the accident or of what the medical reports indicated so as to indicate probability of liability and quantum; nor should a court be obliged to decide the reasonableness of each settlement. Here, for example, there were apparently 130 claims settled, and it would abuse both the parties and the judicial system to require proof in each of 130 settlements in a $12,000 lawsuit, unless there is reason to question the reasonableness of each.

> Thus, while the plaintiff insurer will always bear the burden of proof, the presumption of reasonableness will shift to defendant insured the burden of going forward with the evidence to rebut the presumption. Insured need not prove unreasonableness, but must cast sufficient doubt to deprive plaintiff insurer of the benefit of the presumption, whereupon plaintiff's burden of proof will not have been met unless it goes forward with evidence of the reasonableness of the settlement.
>
> [288 *So*.2d at 362.]

In other words, once the insured presents evidence as to any settlements "sufficient to raise a question of the reasonableness" of those settlements, the insurer will be deprived of the benefit of the presumption. *Ibid.* Whereupon the insurer's "burden of proof will not have been met," unless it "can present evidence to establish the reasonableness of any sufficiently questioned settlements." *Ibid.*

*Transit Casualty Co. v. Topeka Transportation Co., Inc.,* 8 *Kan.App.*2d 597, 663 *P.*2d 308 (1983), also involved an action by an insurer against its insured to recover retroactive premiums. With regard to the "two approaches" exhibited in *Transport Indemnity* and *Binnings,* the Kansas Court of Appeals said "we prefer that of the Minnesota Supreme Court [i.e., *Transport Indemnity* ]." *Id.,* 663 *P.*2d at 311. The Kansas Court of Appeals explained why it preferred the approach in *Transport Indemnity:*

> Without unnecessary complication it places the burden of proof on the plaintiff where it traditionally belongs. It requires the party with the information at hand to produce it, and it puts upon the party acting in a fiduciary capacity the burden of proving fair dealing.
>
> [663 *P.*2d at 311.]

Then came *Port East Transfer, Inc. v. Liberty Mutual Insurance Co.,* 330 *Md.* 376, 624 *A.*2d 520 (1993), which involved the same question. After analyzing the decisions in *Transport Indemnity, Binnings* and *Transit Casualty,* the court in *Port East* agreed in part with the approach in *Binnings,* to the extent that "once it [the insurer] has proved payment of settlements," the insured must "come forward with some evidence of the bad faith of the insurer or unreasonableness of particular settlements." 624 *A.*2d at 523–25. However, the *Port East* court did *not* agree with the approach in *Binnings,* to the extent that *Binnings* held that "once it [the insurer] has proved payment of settlements *it is*

*entitled to a presumption of law that it exercised reasonableness and good faith in making the settlements." Id.*, 624 A.2d at 523 (emphasis added). As the Maryland Court of Appeals explained in *Port East*:

> Creating a legal presumption of good faith is one method of allocating a burden of production to the insured, *see* ... *[Binnings* ], but it is not the exclusive method. Because the creation of a presumption carries with it potential complications with respect to the longevity of the presumption and instructions to the jury concerning the presumption, we elect to fix this burden of production [on the insured] *without accompanying it with a presumption.* The allocation is simply a device for predetermining who shall have the burden of producing sufficient evidence to legitimately create an issue. When the burden of production is satisfied, and the issue is therefore properly before the trier of fact, the plaintiff-insurer will shoulder the burden of persuasion on the issue.
>
> [624 A.2d at 525 (emphasis added).]

It, thus, stated the applicable rule as follows:

> In an insurer's action for unpaid retrospective premiums, the unreasonableness and good faith of the insurer in connection with claims subject to such retrospective premium adjustment need not be specifically alleged in the complaint nor proven as a part of the insurer's case in chief. The burden of production of evidence [on that issue] is upon the defendant-insured; the burden of persuasion when that issue is properly generated is upon the plaintiff-insurer. ·
>
> [624 A.2d at 525.]

In his opinion of January 25, 1996, Judge Doyne held as follows:

> This is a case of first impression in the State of New Jersey with respect to which party bears the burden of proving the reasonableness of settlements with retrospective premiums. As a conflict of interest is inherent in such an arrangement where the insurer is settling claims with the insured's money, the Minnesota Supreme Court [in *Transport Indemnity*] has held that the insurer bears the burden of proving the reasonableness and good faith of the premium raising settlements....
>
> The Court of Appeals of Louisiana in the case of ... *Binnings* ..., agreed with *Transport* in the observation that the insurer is the party in possession of the evidence upon which the propriety of the settlements must be judged. Further, the Court [in *Binnings* ] held that although the plaintiff ultimately bears the burden of proving every element of its cause of action, including reasonableness of its settlements, that:
>
>> [O]nce an insurer under a retrospective premium plan has shown (or there is no dispute) that it in fact has paid settlements, it is entitled to a presumption of law that it has exercised reasonableness and good faith in making the settlements.
>
> *Id.* at 362....
>
> *This court need not go as far as to provide the plaintiff such a presumption.* Based on the reasoning of the *Binnings* decision, this court rules that[,] once the

insurer has shown or there is no dispute that it in fact has paid the settlements, the burden shifts to the insured to make *some* showing of the carrier's negligence in its claims handling.... This court finds that defendant has failed in discovery and at trial to identify any instance of unreasonableness with which to cast sufficient doubt upon Liberty's claim handling.

[ (emphasis added).]

As can easily be seen, while Judge Doyne referred to the "reasoning of the *Binnings* decision," he actually followed the reasoning of *Port East*, which is cited without discussion in his decision. In light of President's argument on appeal, the *Port East* decision warrants further discussion.

In *Binnings, supra*, the court noted that "there were apparently 130 claims settled," and concluded that it "would abuse both the parties and the judicial system to require proof in each of 130 settlements in a $12,000 lawsuit, unless there is a reason to question the reasonableness of each." 288 *So.*2d at 362. The court in *Port East* agreed with that analysis. It said that "to require the insurer, in the absence of any evidence of bad faith, to offer proof of its good faith in investigating, adjusting, and settling hundreds of claims in order to prove its action for premiums, 'would abuse both the parties and the judicial system.'" 624 *A.*2d at 524.

Reasoning from that basic premise, the *Port East* court concluded:

We hold, therefore, that in a case such as this, although the ultimate burden of proof of its claim remains at all times with the insurer, the burden of production of evidence of violation by the insurer of an implied condition of good faith is upon the insured. We believe this allocation of the burden of production will provide adequate protection for the party claiming bad faith, but will not unnecessarily burden the insurer or the court with protracted proceedings and unnecessary production of evidence concerning matters not legitimately at issue.

In allocating to the insured this burden of coming forward with the evidence, we have taken into consideration that the insurer will ordinarily have superior knowledge of the facts bearing on the issue. Of necessity, then, wide latitude must be given the insured in pretrial discovery. It seems unlikely that an insured will undertake the considerable expense of an extended inquiry into every case file without some reasonable suspicion that the insurer failed in its implied obligation. If the insured wishes such an inspection, however, modern discovery techniques are entirely sufficient to permit it, and the parties may thereby determine the existence of legitimate issues that should properly be brought before the court.

In *Liberty Mutual Insurance Co. v. Marty's Express, Inc.*, 910 *F.Supp.* 221 (E.D.Pa.1996), decided contemporaneously with Judge Doyne's decision, the United States District Court was required to decide how the Pennsylvania Supreme Court would answer this very question. The District Court found the *Port East* reasoning persuasive:

> We agree with *Port East* that this regime of burden allocation best provides adequate protection for the insured, but will not needlessly burden the insurer or the court with protracted proceedings and production of evidence concerning matters not legitimately at issue.

[910 *F.Supp.* at 224.]

Given this, the District Court ruled that the defendant insured should "bear the burden of producing evidence that plaintiffs violated their implied duty to act reasonably and in good faith in handling claims," and that, "[i]f defendants produce evidence that plaintiffs mishandled a claim, then plaintiffs bear the burden of persuading the jury that they acted in good faith in handling that claim and that the settlement of the claim was reasonable." *Id.* at 225.

Although this is a case of first impression in New Jersey we believe there is analogous authority for Judge Doyne's conclusion in *American Home Assurance Co., Inc. v. Hermann's Warehouse Corp.*, 117 *N.J.* 1, 563 *A.2d* 444 (1989). In *American Home*, the insurer settled a claim (the Adler claim) against its insured for an amount in excess of the applicable deductible, and then sued its insured to recover the deductible. In the course of the Supreme Court's opinion, it noted that insurance companies must act in good faith in settling claims, and although the concept had not been applied in cases involving an insured's deductible, there was no reason why it should not be applicable in such circumstances. 117 *N.J.* at 10, 563 *A.2d* 444. However, in affirming a judgment in favor of the insurer, the Supreme Court noted that, "at the trial level [neither] in affidavit form or depositions," was there "even a hint of bad faith ..., either in the carrier's handling of the defense

of the Adler claim or in its settlement of that claim." 117 *N.J.* at 10, 563 *A.*2d 444.

That passage from the Court's opinion is an implicit suggestion that, if the defendant-insured intended to attack the plaintiff-insurer's settlement of the Adler claim as being the product of bad faith, as opposed to simply bad judgment, the insured had the burden of presenting some evidence indicating that the insurer had acted in bad faith, even if it was no more than "a hint of bad faith." 117 *N.J.* at 10, 563 *A.*2d 444. Thus, we conclude that our Supreme Court, if faced with the issue now before us, would adopt the rule of burden allocation set forth in *Port East*, as did Judge Doyne.

## II

Defendant contends that the judge's "finding that Liberty Mutual's settlement of claims was reasonable is so wholly unsupported by reasonable credible evidence as to be unjust." We disagree.

The flaw in defendant's argument is that the judge made no finding that plaintiff's "settlement of claims was reasonable." To the contrary, Judge Doyne found as follows:

Based on the reasoning of the *Binnings* decision, this court rules that[,] once the insurer has shown or there is no dispute that it in fact has paid settlements, the burden shifts to the insured to make some showing of the carrier's negligence in its claims handling.... This court finds that defendant has failed in discovery and at trial to identify any instance of unreasonableness with which to cast sufficient doubt upon Liberty's claim handling.

Thus, there was no finding that plaintiff's "settlement of claims was reasonable." Rather, the judge found that defendant's evidence did not cast "sufficient doubt" upon plaintiff's settlement of the claims, in that defendant's evidence "failed ... to identify any instance of unreasonableness." We agree with Judge Doyne's finding.

Given that the judge made no finding that plaintiff's "settlement of claims was reasonable," there is no underlying factual support

for defendant's contention that such a finding is "unsupported by reasonable credible evidence."

## III

President contends that the judge's ruling that Liberty had not materially breached the 1983 contract is against the weight of the evidence. Because "Liberty Mutual ... did not comply with the provisions of paragraphs (e), (f) or (g) of the 1983 Agreement," which provisions were "conditions precedent that Liberty Mutual should have performed," President asserts in its brief that "there can be no liability on behalf of President."

 The parties to a contract "may make contractual liability dependent upon the performance of a condition precedent." *Duff v. Trenton Beverage Co.*, 4 *N.J.* 595, 604, 73 *A.*2d 578 (1950). However, condition precedents are "disfavored by the courts." *Marsa v. Metrobank For Savings, F.S.B.*, 825 *F.Supp.* 658, 664 (D.N.J.1993), *aff'd*, 26 *F.*3d 122 (3d Cir.1994). This is because the "failure to comply with a condition precedent works a forfeiture." *Castle v. Cohen*, 840 *F.*2d 173, 177 (3d Cir.1988). Given this, a condition precedent "must be expressed in clear language or it will be construed as a promise." *Ibid. See Kennedy v. Westinghouse Corp.*, 29 *N.J.Super.* 68, 78, 101 *A.*2d 592 (App.Div.1953), *aff'd*, 16 *N.J.* 280, 108 *A.*2d 409 (1954) ("where by the terms of the contract performance on one side is made a condition precedent to performance by the other, such an intention expressed in the contract will be given effect"). *See also Marsa, supra*, 825 *F.Supp.* at 664 ("where the contract language is unclear, an obligation should be interpreted as a promise, rather than a condition precedent"). Judge Doyne rejected defendant's argument because, "nothing in the 1983 agreement, the binder for the Worker's Compensation policy, nor the evidence at trial suggests that Liberty Mutual agreed that compliance with all terms of the 1983 agreement [was] a condition to defendant's payment of premiums after Liberty Mutual had managed and settled its claims." Judge Doyne's findings are amply supported by the record and established

principles of law. Thus, we reject defendant's contention on this point.

Affirmed.