**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4024-17T4

BELVERON PARTNERS
FUND IV JV, LLC, MOUNT
CARMEL HOUSING, INC, and
FRANKLIN SQUARE NEW
JERSEY AFFORDABLE, LLC,

     Plaintiffs-Appellants,

v.

FRANKLIN SQUARE
ASSOCIATES, a New Jersey
Limited Partnership,

     Defendant-Respondent.

_____

Argued March 12, 2019 – Decided August 8, 2019

Before Judges Yannotti and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2803-17.

Courtney A. Sullivan (Venable LLP) of the Virginia bar, admitted pro hac vice, argued the cause for appellants (Venable LLP, attorneys; Courtney A. Sullivan and Brian L. Schwalb (Venable LLP) of the Virginia bar, admitted pro hac vice, of counsel and on

the brief; Patrick J. Boyle and Michael A. Guerra, on the brief).

Ronald L. Israel argued the cause for respondent (Chiesa Shahinian & Giantomasi, PC; attorneys; Ronald L. Israel, Melissa A. Salimbene and Brigitte M. Gladis, on the brief).

PER CURIAM

Plaintiff Belveron Partners Fund IV JV, LLC (Belveron) and its assignee, plaintiff Franklin Square NJ Affordable LLC (Franklin Square Affordable), whose sole member is plaintiff Mount Carmel Housing, Inc., appeal from the Law Division's March 29, 2018 orders denying their motion for summary judgment and granting defendant Franklin Square Associates, LLP's cross-motion for the same relief, dismissing plaintiffs' complaint. The complaint sought the return of the deposit that plaintiffs paid towards the purchase of real estate.

The motion judge entered the orders after determining that plaintiffs did not have a right to cancel the contract although he recognized that the parties' agreement contained a provision permitting cancellation. However, he found that the contract's right to cancel could never be exercised by plaintiffs because at the agreement's "inception[, it] had no meaning . . . ." We reverse because we conclude that the motion judge erroneously construed the parties' agreement.

A-4024-17T4

The material facts are not disputed. On February 2, 2017, Belveron contracted with defendant to purchase property in Glendora for $24 million and pursuant to their contract, paid a $480,000 deposit towards the purchase that was to be held in escrow by a title company pending closing or termination.

Under the contract, Belveron, as the purchaser, could terminate for any reason during a "feasibility period." The feasibility period began on the date of contracting and ran "through and including the fortieth . . . day thereafter." Under Section 7(a), Belveron represented that it had authority to enter into the agreement and "carry out Purchaser's obligations under [the] Contract." However, the contract also contained conditions precedent described as "Ratification Provisions," which if not satisfied, allowed either party to terminate the contract within two days of the end of the feasibility period.

Specifically, Section 5 of the contract stated, in relevant part, as follows:

> (a) Purchaser's performance of its obligations hereunder is subject to the satisfaction of the following conditions: (i) Seller must furnish Purchaser with evidence of receipt of all necessary approvals of the sale of the Seller's Property by its members and/or board of directors, as applicable (ii) ratification of this [c]ontract by Purchaser's board of directors . . . .
>
> . . . .
>
> (e) In the event either of the conditions specified in Section 5(a)(i) or 5(a)(ii) (collectively, the

"Ratification Conditions") has not been satisfied prior to expiration of the [f]easibility [p]eriod, each of Purchaser and Seller shall have two (2) business days to exercise the right to notify the other party that it is terminating this [c]ontract, in which case the Purchaser shall receive a refund of the [d]eposit. In the event that Purchaser and Seller each fail to terminate the [c]ontract in accordance with this Section 5(e), the Ratification Conditions shall be deemed satisfied.

[(Emphasis added).]

Belveron immediately assigned its rights under the contract to Franklin Square Affordable. As required by the agreement, Belveron advised defendant of the assignment on March 9, 2017 and Franklin Square Affordable assumed the status of "Purchaser" under the contract.

On March 14, 2017, Franklin Square Affordable initially attempted to terminate the contract during the feasibility period based upon its determination that it should be paying less for the property. However, when defendant advised that the feasibility period had expired a day earlier, Franklin Square Affordable withdrew its notice of termination.

The next day, Belveron and Franklin Square Affordable sent an email advising defendant that they were terminating the contract pursuant to Section 5. The email stated that "the Purchaser has been unsuccessful in obtaining the necessary ratification described in Section 5(a)(ii) . . . ."

On March 20, 2017, defendant demanded the escrow agent release to it the deposit paid by Belveron. Franklin Square Affordable and Belveron objected to defendant's demand, and requested the return of the deposit. However, the escrow agent refused to release the deposit to either party and requested the parties resolve the issue. By July 2017, the matter remained unresolved.

On July 14, 2017, plaintiffs filed their complaint alleging that defendant breached the contract by refusing to direct the escrow agent to release the deposit to plaintiffs after they terminated the contract. Defendant answered and denied the allegations and in February 2018, the parties filed cross-motions for summary judgment, arguing whether plaintiffs properly cancelled the contract under Section 5 of their agreement.

The motion judge considered the parties' oral arguments and denied plaintiff's motion and granted defendant's, placing his reasons on the record on March 29, 2018, in an oral decision. The judge concluded that the term "board of directors" in the contract was unambiguous and because neither purchaser had a board of directors, there could be no ratification under Section 5. He determined that the clause had no meaning and thus the purchasers could not rely upon the provision to terminate the contract. This appeal followed.

On appeal plaintiffs argue that the motion judge erred by "literally construing the term 'Board of Directors'" in deciding that plaintiffs could not exercise their rights under Section 5 because they were limited liability companies managed by members rather than corporations managed by boards of directors. Plaintiffs contend that the contract obviously imposed "mirror obligations" on the purchaser and the seller by requiring ratification by their respective controlling decision makers. In the alternative, they contend that if we conclude that Section 5 is ambiguous, we "should remand the matter to allow the parties to present extrinsic evidence of intent."

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Lee v. Brown, 232 N.J. 114, 126 (2018). We review the trial court's legal determination de novo. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). In doing so, we owe the trial court no deference as to its "interpretation of the law and the legal consequences that flow from established facts . . . ." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. R. 4:46-2(c). "The interpretation of a contract is ordinarily a legal question for the court and may

6

be decided on summary judgment unless 'there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation . . . .'" Celanese Ltd. v. Essex Cty. Improvement Auth., 404 N.J. Super. 514, 528 (App. Div. 2009) (alteration in original) (quoting Great Atl. & Pac. Co. v. Checchio, 335 N.J. Super. 495, 502 (App. Div. 2000)).

In our review of disputed contract terms, we apply well-established guiding principles. A court interpreting a contract seeks "to ascertain the 'intention of the parties to the contract as revealed by the language used, taken as an entirety . . . , the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain.'" Borough of Princeton v. Bd. of Chosen Freeholders of Mercer, 333 N.J. Super. 310, 325 (App. Div. 2000) (alteration in original) (quoting Cruz-Mendez v. ISU/Ins. Servs., 156 N.J. 556, 570-71 (1999)).

An appellate "court must consider contractual language in the context of the circumstances at the time of drafting and . . . apply a rational meaning in keeping with the expressed general purpose. [I]f the contract into which the parties have entered is clear, then it must be enforced as written." Serico v. Rothberg, 234 N.J. 168, 178 (2018) (alterations in original) (quoting In re Cty. of Atlantic, 230 N.J. 237, 254-55 (2017)). "Contracts should be read 'as a whole

in a fair and common sense manner.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009)). Courts generally give contractual terms their plain and ordinary meaning. Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002). "A party that uses unambiguous terms in a contract cannot be relieved from the language simply because it had a secret, unexpressed intent that the language should have an interpretation contrary to the words' plain meaning." Ibid.

"Where the terms of an agreement are clear, [courts] ordinarily will not make a better contract for the parties than they have voluntarily made for themselves, nor alter their contract for the benefit or detriment of either, particularly in a commercial, arms-length setting." Carroll v. United Airlines, Inc., 325 N.J. Super. 353, 358-59 (App. Div. 1999). In determining the parties' intent, "[t]he document . . . must be read as a whole, without artificial emphasis on one section, with a consequent disregard for others. Literalism must give way to context." Borough of Princeton, 333 N.J. Super. at 325. "A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner." Porreca v. City of Millville, 419 N.J. Super. 212, 233 (App. Div. 2011) (quoting Hardy, 198 N.J. at 103).

"A contract 'should not be interpreted to render one of its terms meaningless.'" Ibid. (quoting Cumberland Cty. Improvement Auth. v. GSP Recycling Co., 358 N.J. Super. 484, 497 (App. Div. 2003)). If the language used by the parties "would bring about an unreasonable or absurd result, or would defeat the manifest intention of the parties and the object and purpose of entering into the contract[,]" we give the language the meaning obviously intended by the parties. Booth v. United States Fid. & Guar. Co., 3 N.J. Misc. 735, 737 (1925).

Applying these settled rules, we conclude that the motion judge's literal application of the words stated in Section 5 was contrary to the obvious intent of the parties to require their governing bodies to approve the contract as a condition precedent to the parities' performance of the obligations under the contract. "A condition in a promise limits the undertaking of the promisor to perform, either by confining the undertaking to the case where the condition happens, or to the case where it does not happen." Duff v. Trenton Beverage Co., 4 N.J. 595, 605 (1950). Although "condition precedents are 'disfavored by the courts.' . . . because the 'failure to comply with a condition precedent works a forfeiture[,]'" condition precedents are enforceable when expressed clearly and

unambiguously. Liberty Mut. Ins. Co. v. President Container, Inc., 297 N.J. Super. 24, 34 (App. Div. 1997) (citations omitted).

The motion judge's literal reading of the contract deprived the parties of the benefit of a term that was negotiated by, as found by the judge, "sophisticated parties" during the course of a "sophisticated transaction." There is no reasonable explanation for giving defendant an opportunity to obtain approval from its controlling members and at the same time, limit plaintiffs' ability to obtain the same approval from a board of directors that both parties knew never existed.

Defendant's suggestion that the disputed clause could be applicable if at some point plaintiffs assigned the contract to a corporate entity was not supported by any evidence that was the basis for the difference in the clause that addressed defendant as compared to plaintiffs. We conclude that Section 5, taken as whole, expressed the intention that each party have an opportunity to secure their governing entities' approval before either was obligated to perform, regardless of the form of ownership of each entity. To read the agreement as suggested by defendant and as applied by the motion judge renders Section 5 meaningless and allows for an absurd result.

Under these circumstances, to the extent the error in the contract's drafting was attributable to plaintiffs, as the motion judge correctly determined, between the "sophisticated businesspeople" involved, it made no difference "who drafted" the contract.  See Pacifico v. Pacifico, 190 N.J. 258, 267-68 (2007) (contra proferentem, which "requires a court to adopt the meaning that is most favorable to the non-drafting party. . . . is only available in situations where the parties have unequal bargaining power [not where] both parties are equally 'worldly-wise' and sophisticated ").

Reversed and remanded for vacating the March 29, 2018 orders and entry of orders granting plaintiffs summary judgment and denying defendant's motion for the same relief.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4024-17T4